MISS JANET GAFFNEY v. Z. B. PHELPS, JOHN WILSON, G. R. LEITER, AND C. M. ALLRED.

(Filed 28 January, 1935.)

1. Automobiles D b—

Where the evidence tends to show that the driver of an automobile involved in a collision had borrowed the car from the owner, and at the time of the accident was engaged in an enterprise of his own and not for the owner, the owner's motion as of nonsuit is properly allowed.

2. Automobiles C j—

The negligence of the driver of a car will not be imputed to a gratuitous passenger therein who has no control over the car or driver.

3. **Automobiles O b — Evidence held for jury on issue of concurrent negligence of drivers of cars colliding at street intersection.**

Plaintiff, a gratuitous passenger in an automobile, was injured in a collision occurring at a street intersection in the corporate limits of a city as the car in which she was riding attempted to cross an intersecting "through street." Plaintiff introduced in evidence an ordinance of the city requiring drivers of vehicles to stop before crossing intersections with "through streets." Plaintiff testified that the driver of the car in which she was riding failed to stop before attempting to cross the intersection, and that the other car was being driven along the through street recklessly and at a rate of speed in excess of that allowed by the ordinance on such "through streets": *Held*, the evidence, together with other evidence of negligence and proximate cause, was sufficient to be submitted to the jury on the issue of the concurrent negligence of the drivers of the cars, the evidence tending to show a violation of the ordinance by both drivers.

4. **Automobiles O g—**

The violation of a traffic ordinance of a city is negligence *per se*.

5. **Automobiles O b—Evidence that intersection was obstructed held sufficient to support charge under N. C. Code, 2621 (46).**

Evidence that as defendant driver of an automobile approached a street intersection in a city his view was obstructed by a four-foot hedge growing on top of a three-foot embankment *is held* sufficient to support an instruction that if the jury should find from the greater weight of the evidence that defendant drove his car into the intersection when his view was obstructed, as defined by the court, at a speed in excess of 15 miles an hour he would be guilty of negligence, C. S., 2621 (46), and as the undisputed facts showed the intersection was obstructed as defined by the statute, the instruction cannot be held for error as a peremptory instruction or an expression of opinion by the court.

6. **Evidence D h—**

Testimony of a witness that some nine months after the accident in suit he saw at the scene of the accident a growing hedge four feet high is held some evidence that the hedge was there at the time of the accident, it being common knowledge that it takes time for a hedge to grow four feet high.

7. **Pleadings E a—**

The court has discretionary power to allow an amendment of the complaint during the trial. N. C. Code, 547.

8. **Appeal and Error F a—**

The exclusion of testimony of a witness on cross-examination by one defendant cannot be made the basis on complaint by the other defendant on appeal.

9. **Appeal and Error J e—**

The exclusion of testimony of a witness cannot be held prejudicial on exception where it appears that the answer of the witness, if he had been allowed to testify, would not have been responsive to the question, and it appears that testimony of the same import as that sought to be adduced by the question was admitted during the trial.

**10. Same—**

The admission of a conclusion of an expert witness prefaced by the words "that would be hard to answer" *is held* not prejudicial in view of the other testimony elicited from the witness during the trial.

APPEAL by defendant C. M. Allred from *Hill, J.,* and a jury, at June Term, 1934, of MECKLENBURG. No error.

This is an action for actionable negligence brought by plaintiff against the defendants. The issues submitted to the jury and their answers thereto were as follows: "(1) Was the plaintiff injured by the joint and concurring negligence of the defendants John Wilson and C. M. Allred, as alleged in the complaint? A. 'Yes.' (2) Was the plaintiff injured by the sole negligence of the defendant John Wilson? A. ........... . (3) Was the plaintiff injured by the sole negligence of defendant C. M. Allred? A. ........... . (4) What amount of damage, if any, is the plaintiff entitled to recover? A. '$5,000.' "

Defendant John Wilson did not appeal from the verdict and judgment. An appeal was taken by defendant C. M. Allred, who made numerous exceptions and assignments of error. The material ones will be considered in the opinion.

*Stancill & Davis and Stewart & Bobbitt for plaintiff.*
*Goebel Porter and Henry E. Fisher for C. M. Allred.*

CLARKSON, J. When the collision occurred at the intersection of East Fourth Street and Caswell Road, in Charlotte, N. C., the plaintiff was a guest in a car driven by defendant C. M. Allred, which was owned by defendant G. R. Leiter. John Wilson, one of the defendants, was driving a car owned by Z. B. Phelps. At the close of plaintiff's evidence the defendants Phelps, Leiter, and Allred made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below sustained the motions as to Phelps and Leiter and overruled same as to Allred. At the close of all the evidence the defendant Allred renewed his motion for judgment as in case of nonsuit and the court below overruled same. We can see no error in the ruling of the court below.

Leiter testified: "I gave Mr. Allred permission to use my car on the night of 19 August, 1933. Mr. Allred was not on any mission of mine in going out there and coming back that night. . . . Mr. Allred was not using this car on this occasion on any personal business of mine."

John Wilson testified, in part: "I cannot write. I did not write my name on that paper. . . . I did not write the words 'John' and 'Wilson' there. I can make a mark, but did not make those marks."

This testimony was not disputed and, of course, the paper-writing was no evidence. This witness further testified: "The keys were in the car

all the time. I would leave the keys in the car and I did not have to get them from Mr. Phelps when I would go to use the car. The keys were in the car when I first began using it. Q. The night of the accident, what did he tell you about going in the car? A. Just before I left to go off, he sent me to get some sandwiches, but when I left the other time, he didn't tell me to go anywhere. I went to see my sick mother, and I took it on myself. . . . I took the car to see my sick mother and was on the way back when the accident happened. Phelps didn't know that I had the car." John Wilson did not make a motion in the court below for judgment as in case of nonsuit. *Brown v. Wood,* 201 N. C., 309.

All the evidence was to the effect that the plaintiff was a guest or gratuitous passenger in the car driven by defendant Allred. She did not own or have any control over the car or driver. The negligence of the driver of the car will not ordinarily be imputed to the guest or passenger. *Newman v. Queen City Coach Co.,* 205 N. C., 26; *Keller v. R. R.,* 205 N. C., 269 (278-9).

The plaintiff Janet Gaffney testified, in part: "I was hurt in the collision at intersection of Caswell Road and Fourth Street last August. I am in my twenties. I was riding in Mr. Leiter's car, who is one of the defendants. Mr. Allred, another defendant, was driving the car. I was sitting on the right and Miss Moore, who is now Mrs. Allred, in the middle, and Mr. Allred driving. I was a guest in the car. We were going south on Caswell Road. The car that had a collision with us was going east on Fourth Street. John Wilson was operating the car going east. John Wilson was about one-quarter of a block from the intersection when I first saw his car. John Wilson was going 40 miles an hour from that time up until the collision. The car in which I was riding was going 25 to 30 miles an hour as it approached the intersection.

"Q. State whether or not either car stopped before proceeding onto the crossing? A. No, it didn't stop. As well as I remember it, we were hit by the other car on the side on which I was sitting, by the front of the car, because I felt an awful lick on this side. The right door of our car would not open and they took me out the left door after the collision. They then took me to the Presbyterian Hospital. I suffered agony; I couldn't even be straightened out for a while, because I was broken all through the pelvis. I was broken through my shoulders. That agonizing suffering lasted on for weeks and weeks. . . . The Wilson car was about a quarter of a block away when I first saw it. I was traveling about 25 miles an hour when within 100 feet of the intersection. . . . This accident happened on 20 August, 1933. I went back to work on 13 November, 1933."

We think the evidence plenary to be submitted to the jury as to actionable negligence against both Wilson and Allred. The plaintiff introduced ordinance, section 731 of the Code of the City of Charlotte, N. C. The ordinance related to the intersection of East Fourth Street and Caswell Road in the city, where the collision occurred. West and East Fourth streets were "arterial highways" or "through streets."

Part of said ordinance is as follows: "Section 731 (2). Every operator of a vehicle, street car, or other conveyance traveling upon any of the above designated 'arterial highways' or 'through streets' shall have the right of way over vehicles, street cars, or other vehicles approaching said 'arterial highways' or 'through streets' from or along intersecting streets.

"(3) Every operator of a vehicle, street car, or other conveyance traveling upon any street intersecting any 'arterial highway' or 'through street,' as designated in section 1 hereof, shall bring such vehicle, street car, or conveyance to a full stop at the place where such street meets the prolongation of the nearest property line of such 'arterial highway' or 'through street,' subject, however, to the direction of any traffic control sign or signal, or any police officer, at such intersection.

"(4) The operator of any vehicle who has come to a full stop, as required in section 3 hereof, upon entering the 'arterial highway' or 'through street,' shall yield the right of way to all vehicles moving along and upon said 'arterial highway' or 'through street.' . . . (9) Any person driving a vehicle on the 'arterial highway' or 'through street,' designated in section 1 hereto, shall drive same in a careful and prudent manner, and in no event at a rate of speed of more than 30 miles per hour."

From plaintiff's evidence, both defendants Wilson and Allred were violating the ordinance of the city of Charlotte. This is negligence *per se. Jones v. Bagwell, ante,* 378 (382). The court below charged the jury, to which there was no exception, as follows: "Therefore, the law says the burden of that issue is upon her to satisfy you, by the greater weight of the evidence, that she was injured by the joint and concurring negligence of defendants John Wilson and C. M. Allred before she would be entitled to have you answer the first issue 'Yes.' If, however, after consideration of all the evidence, you are satisfied by the greater weight of the evidence that the plaintiff was injured by the joint and concurring negligence of John Wilson and C. M. Allred, then the court instructs you it will be your duty to answer the first issue 'Yes.' If plaintiff fails to so satisfy you, it will be your duty to answer the first issue 'No.'

"If you find from the evidence, and by its greater weight, that defendant Wilson operated his automobile into the intersection at a care-

less and reckless rate of speed, then the court instructs you he would be guilty of negligence, and if you further find from the evidence, and by its greater weight, that the breach of duty by him was one of the proximate causes of injury to the plaintiff, the court instructs you he would be guilty of actionable negligence, or if you find from the evidence, and by its greater (weight) that he exceeded the speed limit as provided in subsection 9 of the city ordinance in excess of thirty (30) miles an hour, the court instructs you, upon that finding, he would be guilty of negligence, and if the plaintiff has further satisfied you, by the greater weight of the evidence, that the violation was the proximate cause or one of the proximate causes of her injury, then the court instructs you that that would be actionable negligence.

"Now, if you find from the evidence, and by its greater weight, that as Mr. Allred approached the intersection of East Fourth Street and Caswell Road, he didn't stop at the 'arterial highway,' as provided in the city ordinance, but drove on out in the highway without stopping, then the court instructs you he would be guilty of negligence, and if the plaintiff has further satisfied you, by the greater weight of the evidence, that that violation was the proximate cause or one of the proximate causes of her injury, then the court instructs you that would be actionable negligence on the part of defendant Allred." *White v. Realty Co.*, 182 N. C., 536 (538); *Eller v. Dent*, 203 N. C., 439; *Jones v. Bagwell*, *supra*.

The court below also charged the jury: "If you further find from the evidence, and by the greater weight, that he (Allred) operated his automobile in the intersection when his view was obstructed, as has been defined to you by the court and as has also been read to you by the court from section 2621 (46) of the Consolidated Statutes, subsection 3. If he drove into the intersection with his view obstructed, at a speed in excess of 15 miles an hour, that would be negligence, and if that negligence was the proximate cause or one of the proximate causes of plaintiff's injuries, then the court instructs you it will be your duty to find actionable negligence in favor of the plaintiff against defendant Allred."

To this portion of the charge the defendant Allred excepted, and assigned error. We do not think this exception and assignment of error can be sustained. We think there was sufficient evidence on which to base the charge.

Leiter testified, in part: "There was a stop sign on the north side of Caswell Road. I know that on the night of this accident that there is an embankment here before you get up to the edge—rather high embankment on this northwest corner, about 3 feet high, with a hedge on top of it, and that hedge continues up Caswell Road along that Presbyterian Hospital lot, and there are trees in there, but not right on the

corner; I would say they are 10 to 15 feet from the corner, which trees are about as close to Caswell Road as Fourth Street. I can stop at the stop sign and see forty-five yards down Fourth Street."

Jack Spratt, county surveyor, a witness for defendant Wilson, testified that he made a measurement the morning of the day he testified. "Court: Do you know whether or not the hedge was there in 1933? A. Yes, it is the same hedge as far as I know, with exception of trimming it up—I should say it is practically the same. Attorney Porter (for defendant Allred) requests court's permission to qualify this witness, which is allowed. Porter: Q. Were you at that place to look at those hedges on 20 August, 1933? A. I can't say that I was. Q. You don't know whether the hedges were cut down at that time or not, of your own knowledge? A. No. . . . This hedge is approximately four (4) feet high. At the intersection of these two streets, the northwest intersection, this hedge is located about ten (10) feet from the intersection of these two streets. It is on a curve—right like that, and after it hits Fourth Street, the hedge is five (5) feet back from the inner edge of the sidewalk line, and it keeps approximately the same height all the way down. At this particular point the hedge is planted on a grade about two (2) feet higher than top of sidewalk, which would make the top of the hedge about six (6) feet higher at the northwest intersection of these two streets. Court: Is that all the way around the intersection? A. It gets higher as it goes up here and the hill is higher on East Fourth Street. I would say that it is about the same for one hundred (100) feet or more down to the entrance of the hospital."

This testimony is some evidence to indicate that the hedge was there on 20 August, 1933—some nine months before. Taking the testimony of Leiter and Spratt as a whole, on this aspect we see no prejudicial error. It is a matter of common knowledge that it takes time for a hedge to grow four feet high. Allred further contends that it was error for the court below to charge the jury that if it found Allred violated C. S., 2621 (46), he would be guilty of negligence. Taking a liberal view of the allegations of the complaint, we see no prejudicial error on this aspect of the charge. It is further contended by Allred that the court below expressed an opinion and gave a peremptory instruction on same. We cannot so hold. We think, from the view we take of the evidence, the admitted—at least, the undisputed—facts, show that Allred approached a blind corner, and C. S., 2621 (46), was applicable. It was in the discretion of the court below to amend the complaint during the trial. N. C. Code 1931 (Michie), sec. 547. *Hood, Comr., v. Love,* 203 N. C., 583.

On cross-examination of witness Wilson by defendant Leiter, witness was asked: "Did they convict you in police court for driving this car

while drunk?" Defendant Wilson, who was the witness, objected. Objection was sustained. The answer would have been, "They got me over there." The defendant Allred did not ask this question, and certainly he cannot be heard to complain. The answer would not have been responsive, and no one was prejudiced by sustaining the objection; and if anyone had a right to complain it would have been the defendant Leiter and not defendant Allred. It will also be noticed that the policeman testified that Wilson, at the time of the collision, was drunk and they locked him up. It will also be noticed that Wilson was a defendant and was being examined by the plaintiff under the statute, and the plaintiff did not ask this question, and was in no wise connected with it. If error, we do not see how it is prejudicial to Allred.

Dr. Martin, from the question asked him, said: "That would be hard to answer. . . . There is no way for me to say positively that she would have trouble or not, but there is a possibility that she would."

If there was error, we do not think it prejudicial. The defendant Allred, on recross-examination, brought out the fact: "The pelvis itself is normal in size." The issues submitted by the court below, we think, were correct, and the issues tendered by the defendant not applicable to this controversy, nor was C. S., 618.

We have read the charge of the court below with care, and the learned brief of defendant Allred, but cannot say on the record and taking the charge as a whole that there was prejudicial or reversible error.

No error.