EDWIN W. CARRIGAN, PLAINTIFF, v. JOHN CHARLES DOVER, AND PAUL L. YOUNT, TRADING UNDER THE NAME AND STYLE OF YOUNT REEP MOTOR COMPANY, DEFENDANTS.

(Filed 4 November, 1959.)

**1. Automobiles § 42a—**

Whether nonsuit on the ground of contributory negligence of plaintiff motorist should be granted or whether the issue should be submitted to the jury must be determined in accordance with the facts of each particular case, and ordinarily consideration must be given to the evidence in regard to the surrounding circumstances such as fog, rain, glaring headlights, etc.

**2. Negligence § 19c—**

Nonsuit on the ground of contributory negligence will be granted only when plaintiff's own evidence establishes the facts necessary to show contributory negligence so clearly that no other conclusion can be reasonably drawn therefrom.

**3. Automobiles § 7—**

A motorist is not required to anticipate negligence on the part of others, but, in the absence of anything which gives or should give notice to the contrary, is entitled to assume and to act upon the assumption that every other person will perform his legal duty and obey the law.

**4. Automobiles § 42a—**

The duty to exercise ordinary care for his own safety applies to a nocturnal motorist as well as to every other person, and it is his duty not merely to look but to keep a lookout in the direction of travel, and he is held to the duty of seeking what he ought to have seen.

**5. Automobiles § 42d— Evidence held for jury on question of contributory negligence in striking parked vehicle.**

The evidence in this case *is held* not to disclose contributory negligence as a matter of law on the part of plaintiff motorist in striking the rear of a truck, parked without lights on the right side of a six lane highway, with its rear protruding some three feet into the center lane for northbound traffic, there being evidence that plaintiff had turned from the left northern lane into the center lane some 40 feet from the trailer when a car preceding him in that lane gave a signal for a left turn, and that plaintiff was some 25 or 30 feet from the trailer when he first saw it, there being further evidence that the night was dark, that the background of the trailer was a vacant house, that the darkness blended together, that the tractor-trailer was parked on a busy thoroughfare on which parking was prohibited, etc.

**6. Appeal and Error § 41—**

The overruling of defendant's objection to the testimony of an expert witness relating to "possibilities" of a subsequent deterioration in plaintiff's condition from the injury in suit, *is held*, on the facts of this case, not sufficiently prejudicial to justify a new trial.

**7. Automobiles § 6—**

A municipal ordinance prohibiting parking along a portion of a certain street is an ordinance enacted in the interest of public safety, so as to warrant an instruction that the violation of such ordinance would constitute negligence *per se*, which would warrant recovery if the proximate cause of the injury.

**8. Appeal and Error § 42—**

Where the charge is free from prejudicial error when read contextually, exceptions thereto will not be sustained.

HIGGINS, J., not sitting.

APPEAL by defendants from *Froneberger, J.,* 20 April Term, 1959, of MECKLENBURG.

Civil action to recover damages for personal injuries.

The jury found by its verdict that plaintiff was injured by the negligence of the defendants as alleged in his complaint, that he was free from contributory negligence, and awarded damages in the amount of $6,500.00. The issues submitted in respect to damage to the defendant Yount's trailer, as alleged in the counter-claim, were not answered by the jury.

From judgment entered in accord with the verdict, defendants appeal.

*Bailey & Booe for plaintiff, appellee.*
*Kennedy, Covington, Lobdell & Hickman for defendants, appellants.*

PARKER, J. Plaintiff and defendants offered evidence. Defendants assign as error the denial by the trial court of their motion for judgment of nonsuit made at the close of all the evidence. Defendants' contention in their brief on this assignment of error is that plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff's evidence shows the following facts:

About 3:00 a.m. on 26 January 1958 plaintiff was driving a 1956 Ford automobile, which was in good operating condition, in a northerly direction along Independence Boulevard in the city of Charlotte. It was a dark night, the weather was dry, and there was no moon. Independence Boulevard is a paved highway about 60 feet wide with three lanes for traffic going north and three lanes for traffic going south. On this occasion there was a black or white line—the evidence differs as to the color of the line—on the middle of the Boulevard separating the north lanes from the south lanes.

The collision in which plaintiff was injured occurred on Independence Boulevard between the intersection of Elizabeth Street and Independence Boulevard and the intersection of Fifth Street and Independence Boulevard. The distance between these two intersections is 385 feet. The parties stipulated in open court that the legal speed limit at the time and place where the collision occurred was 35 miles an hour.

When plaintiff reached the intersection of Elizabeth Street and Independence Boulevard, he was driving between 20 and 30 miles an hour in the lane of travel next to the white or black line in the middle of Independence Boulevard. Just before he drove across the intersection, he saw an automobile about 50 feet ahead travelling on Independence Boulevard in the same direction he was going and at a slightly lower speed than he was. About 220 feet from the intersection plaintiff had just passed through, Independence Boulevard makes a slight turn to the left. When the automobile in front approached this slight turn, it gave a signal by blinker for making a left turn. Whereupon, plaintiff proceeded to change lanes by moving from the lane he was driving in to the center lane. Plaintiff testified: "Just as I got into the center lane, this big, dark object appeared in front of me. I estimate it was sitting out three feet into the center lane. The background for that object was a vacant house. There was no light in there. The darkness blended together. By that time I was, I guess, twenty-five feet from the truck, and I had no time to apply my brakes or turn. I attempted to take my foot off, but I was on it and run into the right side, the right side of my car side-swiped the truck. . . . The tractor-trailer or a part of it was sitting in the middle lane of the three northbound lanes . . . I was approximately around forty feet I estimate from the tractor-trailer when I changed lanes. I did not see it at the moment I started to change lanes. The house that I stated a minute ago was beyond the tractor-trailer is right, you can see it behind the sign there, the Toddle House sign. It is a vacant house and is still there. It was dark on this occasion. The tractor-trailer on this occasion was a dark color. The tractor-trailer had no lights burning on it. There were no other warning signals such as flares out there. There was a street light on the corner. The street light in the picture is at Fifth Street, and there is one on Independence Boulevard. It did not make an area of broad daylight." The Ford automobile was demolished, plaintiff was knocked unconscious, and injured.

The automobile plaintiff was following was between him and the tractor-trailer, when it signalled for a left turn. The front automobile

partially kept plaintiff from seeing the tractor-trailer. He did not see the tractor-trailer, when he started to change lanes.

Plaintiff's testimony on cross-examination was to this effect. The automobile in front of him was about five feet high. There were street lights along the Boulevard. The Toddle House was open the night of the collision. They have lights inside the Toddle House. A sign in front of the Toddle House says "Toddle House." He did not recall whether this sign was burning at the time: this sign is not designed to put out light. There was a sign that said "No Parking, Stopping or Standing" where the tractor-trailer was parked. He was 35 feet from the tractor-trailer when he saw it. From the time he saw it until the collision there was such a short time he was unable to do anything. He tried to turn, and did not make it.

T. H. Cooper, a police officer of Charlotte and witness for plaintiff, arrived at the scene shortly after the collision, about 3:18 a.m. When he arrived, the rear end of the tractor-trailer was from two to three feet from the curb, the front end just slightly a few inches closer than the rear wheels, and twelve to eighteen inches of the tractor-trailer was in the middle lane for traffic. Cooper testified: "On the east side of Independence Boulevard for northbound traffic there is no parking. I do not know the complete wording of the signs at the Toddle House at the time of the accident, but there was a no parking sign there . . . there was no parking at that time." Cooper testified on cross-examination to the effect that at the time Independence Boulevard was better lighted than other Charlotte streets.

Defendant Dover was driver of the tractor-trailer. Defendant Yount was the owner of the tractor-trailer. Defendants in their joint answer admit that at the time and place defendant Dover was an agent of defendant Yount, and was operating the tractor-trailer at the time with the knowledge, permission and consent of Yount, and within the scope of his employment and in furtherance of his employer's business.

Plaintiff pleaded and introduced in evidence the following two ordinances of the city of Charlotte:

"STOPPING, STANDING, AND PARKING

Section 28. PARKING PROHIBITED ON ANY STREETS WHEN SIGNS POSTED.

(a)   When signs prohibiting parking are erected on any streets no person shall park a vehicle in any such designated place.

"Section 36. STANDING OR PARKING CLOSE TO CURB. No person shall stand or park a vehicle in a roadway other than parallel with the edge of the roadway, headed in the direction of

traffic, and with the curb side wheels of the vehicle within 12 inches of the edge of the roadway. . . ."

B. A. Corbett, Jr., an employee of the Traffic Engineering Department of the city of Charlotte and a witness for the defendants, testified 1: "In January 1958, on the east side of Independence Boulevard there were four 'No Parking, Stopping or Standing' signs, there were four of them placed along the east side between Elizabeth and Fifth Streets." He testified on cross-examination in respect to these four signs: "These signs were put up by my department, the Traffic Engineering Department. That is, by the city of Charlotte pursuant to the ordinances."

Defendant Dover testified on direct examination: "The back of the trailer measured approximately eleven feet four inches from the ground. . . . When I stopped, the tractor was just north of the Toddle House, and I suppose the trailer was in the vicinity of the door of the Toddle House. By, in the vicinity, I mean opposite the door of the Toddle House. . . . I know the width of my trailer. It is 96 inches." He testified on cross-examination: "I saw the sign on the telephone pole right in front of my vehicle that said 'No Parking.' I was aware that I was violating that regulation. Nevertheless, in spite of that, I proceeded to park there, and went across the street. . . . My vehicle had probably been sitting there some twenty-five minutes in that no parking area before the collision." Dover had gone across the highway to eat breakfast, as he had not eaten for about ten hours.

According to defendants' evidence the lanes for northbound traffic had the following widths: The lane next to the white or black line on the middle of the Boulevard dividing the north and south lanes eleven feet, the middle lane twelve feet, the lane next to the curb, ten feet.

Negligence on the part of the defendants is manifest on the record. Defendants in their brief make no contention to the contrary, but argue that plaintiff should have been nonsuited for the reason that he was guilty of contributory negligence as a matter of law.

A serious and troublesome question is continually arising as to how far a court will go in declaring certain conduct of a plaintiff contributory negligence, and take away the question of contributory negligence from the jury. *Moseley v. R. R.*, 197 N.C. 628 (635), 150 S.E. 184 (188).

There are two lines of decisions in our Reports involving highway accidents which turn on the question of contributory negligence. In *Tyson v. Ford*, 228 N.C. 778, 47 S.E. 2d 251, and in *McClamrock v. Packing Co.*, 238 N.C. 648, 78 S.E. 2d 749, will be found a list of cases of this type in which contributory negligence was held as a

matter of law to bar recovery, and a second list in which contributory negligence has been held to be an issue for a jury.

Without attempting to analyze and distinguish the reasons underlying the decisions in those cases, they illustrate the fact that frequently the point of decision was affected by concurrent circumstances, such as fog, rain, glaring headlights and color of vehicles, etc., and that these conditions must be taken into consideration in determining the question of contributory negligence and proximate cause. "Practically every case must 'stand on its own bottom.'" *Cole v. Koonce,* 214 N.C. 188, 198 S.E. 637.

A motion for judgment of nonsuit on the ground of contributory negligence will be granted only when plaintiff's own evidence establishes the facts necessary to show contributory negligence so clearly that no other conclusion can be reasonably drawn therefrom. *Johnson v. Thompson,* 250 N.C. 665, 110 S.E. 2d 306; *Tew v. Runnels,* 249 N.C. 1, 105 S.E. 2d 108; *Keener v. Beal,* 246 N.C. 247, 98 S.E. 2d 19.

It is a well settled principle of law that plaintiff was not bound to anticipate negligent acts or omissions on the part of others; but, in the absence of anything which gives, or should give notice to the contrary, he was entitled to assume and to act upon the assumption that every other person will perform his duty and obey the law and that he will not be exposed to danger which can come to him only from the violation of duty or law by such other person. *Weavil v. Myers,* 243 N.C. 386, 90 S.E. 2d 733, and the cases there cited.

The law charges a nocturnal motorist, as it does every other person, with the duty of exercising ordinary care for his own safety. *Chaffin v. Brame,* 233 N.C. 377, 64 S.E. 2d 276. In *Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330, this Court said: "It is the duty of the driver of a motor vehicle not merely to *look,* but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen."

Plaintiff's evidence tended to show he was driving at night at a speed of between 20 and 30 miles an hour, where the legal speed limit was 35 miles an hour. That he was travelling about 50 feet behind an automobile, which partially kept him from seeing the tractor-trailer. That about 220 feet from the intersection of Elizabeth Street and Independence Boulevard, the Boulevard makes a slight turn to the left. That when the front automobile signalled for a left turn, plaintiff proceeded to go into the middle lane for traffic with the tractor-trailer then about 40 feet in front of him. That he was 25 or 35 feet from it, when he saw it. That the tractor-trailer was a dark color, and had no lights burning on it. It had no warning signals, such as flares. The background for the tractor-trailer was a vacant house,

dark at the time. That the darkness blended together. That the Toddle House was open the night of the collision. They have lights inside it. That the tractor-trailer was parked on the Boulevard with part of its rear extending some three feet into the center lane for traffic in violation of the ordinances of the city of Charlotte. That in the block where the collision occurred were signs reading "No Parking, Stopping or Standing" placed there by the city of Charlotte, pursuant to its ordinances. That there was a street light at Fifth Street and one on the Boulevard. It did not make an area of broad daylight. That the boulevard was better lighted than other Charlotte streets. In our opinion, opposing inferences are permissible from plaintiff's proof as to whether or not he ought to have seen in the exercise of ordinary care for his own safety the tractor-trailer in time to have avoided running into it, and as to whether or not he used ordinary care in the interest of his own safety, and therefore, the case was properly submitted to the jury.

Defendants assign as error the failure of the court to peremptorily instruct the jury, as requested by them in a special prayer for instructions aptly tendered, to answer Yes the issue as to contributory negligence of plaintiff. For the reasons stated above, the court was correct in declining to give this special prayer for instruction.

The cases relied on by defendants are factually distinguishable.

Dr. Chalmers R. Carr, stipulated by the defendants to be an expert witness specializing in the field of orthopedic surgery, testified for plaintiff. He testified as follows: "Nine months after the injury my pictures do not show any post-degenerative changes in the wrist leading to traumatic arthritis with respect to this man. Another six or eight months have passed. I don't know whether he has it today or not because I don't have any current pictures, but from examination of the wrist, I would be of the opinion that the likelihood is—it is—very small, there is a possibility." Defendants objected to "possibilities." The objection was overruled, defendants excepted, and assign this as error. On cross-examination Dr. Carr testified: "In my testimony I said there was one possibility and I am not saying that it is a probability in this particular man."

In *Gaffney v. Phelps*, 207 N.C. 553, 178 S.E. 231, Dr. Martin, from the question asked him, said: "That would be hard to answer. . . . There is no way for me to say positively that she would have trouble or not, but there is a possibility that she would." This Court said: "If there was error, we do not think it prejudicial. The defendant Allred, on recross-examination, brought out the fact: 'The pelvis itself is normal in size.'"

If there was error in overruling defendants' objection to Dr. Carr's

statement "there is a possibility," it is, in our opinion, not sufficiently prejudicial to justify a new trial.

Defendants assign as error the part of the charge to this effect: If the jury finds from the evidence and by its greater weight, the burden of proof being on the plaintiff to so show, that defendant Dover negligently parked the tractor-trailer in violation of the city ordinances, and that such negligence was a proximate cause of the collision and resulting injuries to plaintiff, then the jury should answer the first issue Yes, otherwise No. Defendants' contention is that while a violation of a statute designed for the protection and safety of others is negligence *per se,* the ordinances of the city of Charlotte introduced in evidence by plaintiff are not safety ordinances. There is no error in this part of the charge.

The two ordinances of the city of Charlotte introduced in evidence by the plaintiff are traffic ordinances patently enacted in the interests of public safety, and to promote the orderly and safe flow of traffic. "In a broad sense, then, the stopping of vehicles on the streets, including parking, is a part of traffic itself." *People v. Rubin,* 284 N.Y. 392, 31 N.E. 2d 501. A violation of these ordinances is negligence *per se. Morgan v. Coach Co.,* 225 N.C. 668, 36 S.E. 2d 263; *White v. R. R.,* 216 N.C. 79, 3 S.E. 2d 310; *Gaffney v. Phelps, supra; Jones v. Bagwell,* 207 N.C. 378, 177 S.E. 170; *Hendrix v. R. R.,* 198 N.C. 142, 150 S.E. 873. However, "it is a fundamental principle that the only negligence of legal importance is negligence which proximately causes or contributes to the injury under judicial investigation." *McNair v. Richardson,* 244 N.C. 65, 92 S.E. 2d 459.

All the other assignments of error, except formal ones, are to the charge of the court, failure to charge, and failure to give defendants' special prayers for instructions as tendered. We have read the charge of the court with care, and read and considered the brief of defendants. We cannot say on the record that taking the charge as a whole, there was prejudicial error that would warrant a new trial, or that prejudicial error is shown in failure to charge. One part of the charge is too favorable to the defendants.

All defendants' assignments of error are overruled.

No error.

HIGGINS, J., not sitting.