MARCUS LEROY COLEMAN v. SAMUEL L. BURRIS AND SAM HATTEN.

(Filed 13 October, 1965.)

**1. Automobiles §§ 6, 10—**

Where there is neither allegation nor proof that the city street upon which the accident occurred was a part of a State highway, G.S. 136-66.1, plaintiff may not contend that defendant was negligent in violating G.S. 20-134 and G.S. 20-129(d), in parking a vehicle on the hard-surface at night without lights.

**2. Same—**

The violation of a municipal ordinance relating to parking and parking lights is negligence *per se.*

**8. Automobiles § 41e— Evidence of negligence in parking vehicle without lights so that rear extended into lane of travel held to raise jury question.**

Evidence tending to show that defendant parked his truck with the left rear of the bed of the truck about four or five feet on the street in plaintiff's lane of travel, with no reflectors or lights on the rear of the truck, and that plaintiff, blinded by the lights of an on-coming vehicle, did not see the parked vehicle until too late to avoid collision, together with the introduction in evidence of the ordinance of the municipality in which the accident occurred and evidence sufficient to permit the jury to find that the parking of the vehicle was in violation of the ordinance, *held* sufficient to be submitted to the jury on the issue of defendant's negligence in violating the ordinance and also under the common law.

**4. Trial § 22—**

Discrepancies and contradictions, even in plaintiff's evidence, are for the jury to resolve.

**5. Automobiles § 42d—**

    Evidence tending to show that defendant parked his truck with the left rear of the bed of the truck some four or five feet on the street in plaintiff's lane of travel, with no reflectors or lights on the rear of the truck, and that plaintiff, blinded by the lights of an on-coming vehicle, did not see the parked vehicle until too late to avoid the collision, *held* not to disclose contributory negligence as a matter of law. G.S. 20-141(e).

APPEAL by plaintiff from *Farthing, J.,* May 1965 Civil Session of GASTON.

Civil action to recover damages for personal injuries and damage to an automobile growing out of a collision about 11 p.m. on 29 January 1964 between a Volkswagen Karmann-Ghia owned and operated by plaintiff and a flat-bottom two-ton truck allegedly owned by defendants and allegedly negligently parked with its left rear portion on the east side of North Broad Street in the city of Gastonia, without any reflectors or red lights on the rear portion of the truck.

Defendants filed a joint answer in which it is admitted that defendants were the owners of the truck, and that while Sam Hatten was driving it along North Broad Street, the truck ran out of gas and he got out of it and pushed it off the paved portion of the street. The answer denies that defendants were negligent, and further alleges conditionally contributory negligence on plaintiff's part as a bar to recovery.

From a judgment of compulsory nonsuit entered at the close of plaintiff's evidence, he appeals.

*Frank P. Cooke; Childers and Fowler by H. L. Fowler, Jr., for plaintiff appellant.*
*Hollowell & Stott by L. B. Hollowell, Jr., for defendant appellees.*

PARKER, J. Plaintiff's evidence tends to show these facts: About 11 p.m. on 29 January 1964 he was driving his 1963 Volkswagen Karmann Ghia, which is about six and a half feet wide, north on North Broad Street in the city of Gastonia at a speed of 25 or 30 miles an hour. He was alone in the car. North Broad Street is an asphalt paved street 20 or 21 or 22 feet wide. On the eastern side of the pavement of North Broad Street in the area where the collision hereafter set forth occurred is a dirt shoulder about four feet wide and beyond the shoulder is a ditch about eighteen inches to two feet deep. The weather was cold and clear, and it was a dark night. North Broad Street is used for two-way traffic. North Broad Street runs north and south and Harris Street makes a "T" intersection with it from the east. At this intersection hanging over the middle of it is a street light. The collision here occurred about 100 to 125 feet north of this intersection.

Where the collision occurred, North Broad Street is straight and level for about three hundred yards to the south.

Plaintiff testified as follows on direct examination:

> "I came straight out Broad Street and crossed Franklin on my way home, and I got in the vicinity of Harris St. there and I was meeting a car. The car that I was meeting was traveling south. The other car had his lights on bright. I blinked mine, blinked them back dim. He kept on going, I pulled over a little past the center of the road, continued on. I guess I was probably doing 25 or 30 miles an hour. The car passed and the next thing I knew I was on the truck. In response to your question as to why I did not see the truck, well, to begin with, the other car's lights were on bright and, of course, I didn't see the truck until I was right on it. I was meeting the car. He had his lights on bright. I flicked mine on bright, back on dim. He did not dim his lights. My lights were on dim all the way. The car passed. The next thing I knew I was right on the truck. In my opinion, my car traveled roughly 20 or 25 feet after the other vehicle passed me before my vehicle collided with the truck. I did not apply the brakes. In my opinion, my car traveled 25 to 30 feet after striking the truck until it came to a stop."

He testified on cross-examination:

> "I was 25 feet away from Mr. Hatten's truck when I first saw it after this other car passed me. When I first saw it when I was 25 feet away, the first thing I did was to swing to the left as hard as I could. I tried to apply the brakes, but I never did apply them. * * * I saw him when he was 150 feet from my automobile and at that time he had his lights on bright. He blinded me when I first saw him. I just flicked my lights from bright to dim and then back on to bright and during that time I was, of course, blinded. * * * I was going about 30 miles an hour prior to the time that the accident happened. I was going about 30 miles an hour when the lights blinded me. I was going about 30 miles an hour when I passed the automobile whose lights blinded me. I probably had slowed down a little when I had an impact with Mr. Hatten's truck because I only had to take my foot off the accelerator pedal. I hadn't hit my brakes. I would say I was probably going around 25 miles an hour. * * * In response to your question as to why I didn't stop right then and decrease my speed when I was blinded by the lights of this oncoming car, I wasn't doing a dangerous rate of speed to start with, and, of course, I pulled over to my right. I was still in my lane of travel. I didn't pull off onto the

shoulder of the road; I stayed on the paved portion. I didn't stop when I was blinded because I don't recall anybody ever stopping for a car that won't dim his lights, as far as coming to a dead stop. I testified I didn't even hit my brakes. I kept on going at the same speed. I believe the speed limit there would be 35. And I was going roughly 30 miles an hour."

The truck plaintiff's car collided with was "a dual-wheel truck, bed truck, loaded with bricks," and it was standing still with its left rear dual wheels on the pavement of North Broad Street, and with the left rear of the bed of the truck about four or five feet on North Broad Street in plaintiff's lane of traffic. Plaintiff testified on cross-examination: "The truck was angled in, yes sir. It wasn't pulled parallel to the road, it was angled. The right front wheels were not in the ditch. There was no actual ditch there. There was a bank. This area was 18 inches to two feet beneath the surface. That's where the front wheels were when I saw it. (Ditch labeled 'Ditch, four feet from pavement.')" After the collision a board an inch and a half thick and about three feet long extended out of plaintiff's automobile. The right side of plaintiff's car struck the left rear of the bed truck. Plaintiff examined the truck after the collision, and it had no reflectors. When his lights were on low beam plaintiff thinks he could see 30 feet ahead of him, and when his lights were on high beam roughly 55 or 60 feet.

Harold Cletus Truelove, a police officer in Gastonia, arrived at the scene of the collision about ten minutes after it occurred. He testified in effect that upon arrival he saw a dual-wheel truck, bed truck, loaded with bricks, and the left rear wheels were sitting out in the road and the left rear corner of the bed was sticking out into the road about four to five feet. He does not remember seeing any reflectors or any lights on the rear end of the truck. Jacob Howard Prather, Jr., a police officer of the city of Gastonia, arrived at the scene of the collision with officer Truelove. He testified in effect that when he arrived at the scene he did not observe any lights on the rear of the truck.

In the collision plaintiff received personal injuries and his car was damaged.

The parties stipulated that the collision in the instant case occurred on North Broad Street in the city of Gastonia.

In his original complaint in paragraph seven plaintiff alleges that the defendants were guilty of negligence in parking their truck on North Broad Street in the city of Gastonia in violation of G.S. 20-134, G.S. 20-129(d), and G.S. 20-161, and in having no reflectors or red lights on the rear of the truck, and in paragraph eight of his complaint he alleges that the collision resulting in personal injuries to himself and damage to his car was proximately caused by such negligence of

the defendants. At the February 1965 Session of court, before the trial at the May 1965 Session, plaintiff was permitted by the court in its discretion to amend his complaint by deleting paragraph seven therefrom and inserting in lieu thereof a new paragraph seven in which he alleges that the defendants were guilty of negligence in parking their truck on North Broad Street in the city of Gastonia in violation of G.S. 20-134, G.S. 20-129 (d), and in violation of the following sections of the ordinances of the city of Gastonia, to wit, Sec. 23-109 (a) (15), Sec. 23-111 (a), and Sec. 23-111 (c), and in having no reflectors or red lights on the rear of the truck. Defendants filed an answer to the amended complaint denying all of its allegations of negligence.

The following appears in the record:

"PLAINTIFF OFFERED into evidence the CODE OF ORDINANCES of the city of Gastonia, North Carolina, adopted by the City Council of the City of Gastonia on September 16, 1958, effective October 12, 1958, Section 23-109, entitled 'Prohibited places; no signs required. Article 13, Stopping, Standing, or Parking. Division 1. Prohibited in Specified Places, for Certain Vehicles and Purposes.'

" '(a)　No person shall stop, stand, or park a vehicle, except when necessary to avoid conflict with other traffic or in compliance with law or the directions of a police officer or traffic control device, in any of the following places: Section (15), In a traffic lane that is marked or intended for the movement of traffic so that such vehicle obstructs the passage of other vehicles in the lane.'

"Section 23-111:　'Unlawful Parking. No person owning or having control or charge of a vehicle shall:　(a)　Abandon or leave standing such vehicle on any street of the city for a longer continuous period than forty-eight hours.'

"Section (c):　'Park any vehicle upon a street or alley in such a manner or under such conditions as to leave available less than ten feet of the width of the roadway for free movement of vehicular traffic.' "

In *Smith v. Metal Co.*, 257 N.C. 143, 125 S.E. 2d 377, a case relied upon by defendants, a motor scooter driven by plaintiff collided in the nighttime with a truck parked on the east side of Kornegay Street in the city of Goldsboro. In this case the parties stipulated, "Kornegay Street does not constitute any part of the highway system." In the instant case there is no stipulation by the parties to the effect that North Broad Street in the city of Gastonia does not constitute any part of the highway system.

G.S. 136-66.1 provides in part: "The State highway system inside the corporate limits of municipalities shall consist of a system of major

streets and highways necessary to move volumes of traffic efficiently and effectively from points beyond the corporate limits of the municipalities through the municipalities and to major business, industrial, governmental and institutional destinations located inside the municipalities."

Plaintiff has neither allegation nor proof that North Broad Street in the city of Gastonia is a part of the State highway system as set forth in G.S. 136-66.1. However, his evidence and a stipulation by the parties show that North Broad Street is a public street in the city of Gastonia. Therefore, the provisions of G.S. 20-134 and the provisions of G.S. 20-129(d) are not applicable to defendants' truck parked or stopped on North Broad Street in the city of Gastonia, when plaintiff has neither allegation nor proof to show that North Broad Street in the city of Gastonia forms a part of the State highway system. *Smith v. Metal Co., supra.* However, plaintiff's allegations, and his evidence considered in the light most favorable to him and giving him the benefit of every reasonable inference to be drawn therefrom *(Bridges v. Graham,* 246 N.C. 371, 98 S.E. 2d 492), show that defendants stopped or parked their truck about 11 p.m. on 29 January 1964 on the eastern side of North Broad Street in the city of Gastonia — there are no allegations or evidence showing North Broad Street is a part of the State highway system — with its left rear wheels on the pavement of the street and with the left rear of the bed of the truck about four or five feet out on the street in plaintiff's lane of traffic, with no reflectors and no lights on its rear, in violation of Section 23-109(a) of an ordinance of the city of Gastonia reading in relevant part, "No person shall stop, stand, or park a vehicle [with exceptions not relevant here] in a traffic lane that is marked or intended for the movement of traffic so that such vehicle obstructs the passage of other vehicles in the lane," and that the violation of such ordinance was a proximate cause of the collision between plaintiff's car and defendants' truck resulting in plaintiff's injuries and damage to his car. A violation of this ordinance patently enacted in the interest of public safety and to promote the orderly and safe flow of traffic is negligence *per se. Carrigan v. Dover,* 251 N.C. 97, 110 S.E. 2d 825, and authorities there cited. In addition, plaintiff's evidence would permit a jury to find that defendants parked or stopped their truck at night with a part of it on the eastern side of the pavement of North Broad Street in plaintiff's lane of traffic, as above set forth, without any reflectors or lights on its rear; that in doing so defendants failed to do what a reasonably prudent person would do under similar circumstances and charged with a duty to warn approaching traffic at night, by lights or otherwise, of their truck obstructing the street; and that under common law rules defendants were

guilty of negligence which was a proximate cause of plaintiff's injuries and damage to his car. In 2A Blashfield, Cyclopedia of Automobile Law and Practice, Per. Ed., § 1203, it is said: "Irrespective of statute or ordinance, the exercise of ordinary care by a motorist, who parks his car or permits it to stand in the street at night or when vision is obstructed from any cause, to protect himself and others from injury, will frequently require him to place lights on the car. Thus, a failure to take these safety measures is generally negligence under common law rules. * * * The exemption of a disabled vehicle from a statute prohibiting parking on the highway does not absolve the driver of that vehicle from doing what a reasonably prudent person would do under the circumstances to warn approaching traffic at night, by lights or otherwise, of the highway obstruction." See also *Kirby v. Fulbright,* 262 N.C. 144, 136 S.E. 2d 652.

"Discrepancies and contradictions, even in plaintiff's evidence, are for the twelve and not for the court," *Barlow v. Bus Lines,* 229 N.C. 382, 49 S.E. 2d 793, and do not justify a nonsuit, *Keaton v. Taxi Co.,* 241 N.C. 589, 86 S.E. 2d 93.

Plaintiff's allegations and proof make out a case of actionable negligence against defendants.

Defendants contend first that there is insufficient evidence of negligence by defendants, but that "even if it be conceded that the defendants were negligent, the contributory negligence of the plaintiff is manifest from his own testimony and the physical facts of record." To neither contention do we agree.

There are two lines of decisions in our Reports involving highway accidents where the driver of a car collides with the rear of an unlighted vehicle stopped or parked on the highway at night, which turn on the question of contributory negligence. In *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251, and in *McClamrock v. Packing Co.,* 238 N.C. 648, 78 S.E. 2d 749, will be found a list of cases of this type in which contributory negligence was held as a matter of law to bar recovery, and a second list in which contributory negligence has been held to be an issue for the jury. In *Carrigan v. Dover, supra,* it is said:

> "Without attempting to analyze and distinguish the reasons underlying the decisions in those cases, they illustrate the fact that frequently the point of decision was affected by concurrent circumstances, such as fog, rain, glaring headlights and color of vehicles, etc., and that these conditions must be taken into consideration in determining the question of contributory negligence and proximate cause. 'Practically every case must "stand on its own bottom."' *Cole v. Koonce,* 214 N.C. 188, 198 S.E. 637."

In *Weston v. R. R.*, 194 N.C. 210, 139 S.E. 237 (1927), the Court held a motorist must operate his motor vehicle at night in such manner and at such speed as will enable him to stop within the radius of his lights, or within the range of his vision, and that failure to do so is negligence barring recovery. This principle was subsequently applied in many cases, a list of which is set forth in *Burchette v. Distributing Co.*, 243 N.C. 120, 90 S.E. 2d 232. However, the General Assembly passed an Act, Ch. 1145, Session Laws 1953, amending G.S. 20-141(e) by adding thereto the proviso "that the failure or inability of a motor vehicle operator who is operating such vehicle within the maximum speed limits prescribed by G.S. 20-141(b) to stop such vehicle within the radius of the lights thereof or within the range of his vision shall not be considered negligence *per se* or contributory negligence *per se* in any civil action, but the facts relating thereto may be considered with other facts in such action in determining the negligence or contributory negligence of such operator." As a result of this amendment to the statute, if a motorist is traveling within the legal speed limit, his inability to stop within the range of his headlights "shall not be considered negligence *per se* or contributory negligence *per se* in any civil action, but the facts relating thereto may be considered with other facts in such action in determining the negligence or contributory negligence of such operator." *Beasley v. Williams,* 260 N.C. 561, 133 S.E. 2d 227; *May v. R. R.*, 259 N.C. 43, 129 S.E. 2d 624.

It is hornbook law that a driver of a motor vehicle on a highway or street either in the daytime or at night must exercise ordinary care for his own protection. *Carrigan v. Dover, supra.* Plaintiff's evidence shows that he was operating his car along North Broad Street in the city of Gastonia at a speed of about 30 miles an hour, within the maximum speed limit prescribed by G.S. 20-141(b). He was meeting a car which had its lights on bright. When he first saw it, it was about 150 feet from him. Plaintiff blinked his lights, and blinked them back dim as a signal to the approaching motorist. The car approaching plaintiff did not dim its lights. Plaintiff was blinded by the bright lights of the approaching car and continued at his same speed. When this car passed plaintiff, he saw 25 feet ahead of him defendants' bed truck, which was loaded with bricks, partially blocking the street. Plaintiff swung his car to the left as hard as he could, but he was unable to avoid striking with the right side of his car the left rear of defendants' truck, which at night without lights or reflectors on its rear was stopped or parked partially on the pavement of the street. There is nothing in the evidence to indicate or suggest that there was anything which gave or should have given plaintiff notice that a truck without lights or reflectors on its rear was stop-

ped or parked partially on the street ahead of him. In *Chaffin v. Brame,* 233 N.C. 377, 64 S.E. 2d 276, Ervin, J., with his customary clarity and accuracy, speaking for the Court said: "The duty of the nocturnal motorist to exercise ordinary care for his own safety does not extend so far as to require that he must be able to bring his automobile to an immediate stop on the sudden arising of a dangerous situation which he could not reasonably have anticipated. * * * It is a well established principle in the law of negligence that a person is not bound to anticipate negligent acts or omissions on the part of others; but in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption that every other person will perform his duty and obey the law and that he will not be exposed to danger which can come to him only from the violation of duty or law by such other person." Under the provisions of G.S. 20-141(e) as amended by the 1953 Session of the General Assembly, and our decisions, plaintiff on his own evidence was not guilty of contributory negligence as a matter of law; It was a case for the jury. *Rouse v. Peterson,* 261 N.C. 600, 135 S.E. 2d 549; *Dezern v. Board of Education,* 260 N.C. 535, 133 S.E. 2d 204; *Beasley v. Williams, supra; Melton v. Crotts,* 257 N.C. 121, 125 S.E. 2d 396; *Scarborough v. Ingram,* 256 N.C. 87, 122 S.E. 2d 798; *Privette v. Lewis,* 255 N.C. 612, 122 S.E. 2d 381; *Carrigan v. Dover, supra; Keener v. Beal,* 246 N.C. 247, 98 S.E. 2d 19; *Burchette v. Distributing Co., supra; McClamrock v. Packing Co., supra; Chaffin v. Brame, supra; Clarke v. Martin,* 215 N.C. 405, 2 S.E. 2d 10; *Cole v. Koonce,* 214 N.C. 188, 198 S.E. 637; *Williams v. Express Lines,* 198 N.C. 193, 151 S.E. 197.

Defendants rely on *Morris v. Transport Co.,* 235 N.C. 568, 70 S.E. 2d 845 (1952); *McKinnon v. Motor Lines,* 228 N.C. 132, 44 S.E. 2d 735 (1947); *Beck v. Hooks,* 218 N.C. 105, 10 S.E. 2d 608 (1940), all of which cases were decided before the amendment to G. S. 20-141(e) by the 1953 General Assembly above set forth.

The judgment of compulsory nonsuit entered below is
Reversed.