ROBERT MEEKS v. JOHN C. ATKESON, JR.

No. 693DC254

(Filed 6 May 1970)

1. **Automobiles § 56—  hitting vehicle stopped on highway — negligence — nonsuit**

   Plaintiff's evidence that defendant, who was searching for his lost cat, left his unlighted car at night parked across both lanes of a two-lane highway, *held* sufficient to be submitted to the jury on the issue of defendant's negligence.

2. **Automobiles § 76—  hitting vehicle stopped on highway — plaintiff's contributory negligence — nonsuit**

   Plaintiff's evidence *held* insufficient to establish that he was contributorily negligent as a matter of law in striking defendant's unlighted automobile which was parked across both lanes of the highway in the nighttime, where the evidence would support a finding that (1) plaintiff was driving within his proper lane of travel at a speed of 55 mph in a 60 mph zone; (2) the brakes and steering mechanism of his car were in good

order; (3) when he was 250 feet away he first observed defendant's car and applied his brakes; (4) when he was 200 feet away and realized defendant's car was not moving he slammed on his brakes; (5) he attempted to pass to the left of defendant's car, saw that he could not make it, and turned back into his own lane, at which time his car began to skid toward defendant's car.

**3. Automobiles § 8—   unlighted car stopped on highway — nighttime — sufficiency of lookout**

Plaintiff's testimony that he was driving 55 mph on a clear night and that he first observed defendant's unlighted car parked across both lanes of the highway when he was approximately 250 feet away, *held* to negate any inference that he failed to keep a proper lookout.

**4. Automobiles § 13—   use of lights at nighttime — compliance with statute**

Plaintiff's testimony that he was 250 feet away when he first observed defendant's unlighted car parked across both lanes of the highway in the nighttime, *held* sufficient to show that plaintiff complied with G.S. 20-131(a) requiring the use of driving lights sufficient to render clearly discernible a person 200 feet ahead.

**5. Automobiles § 12—   stopping vehicle within radius of lights**

Plaintiff's inability to stop his vehicle within the radius of his lights cannot be considered contributory negligence *per se.* G.S. 20-141(e).

**6. Automobiles § 47—   skid marks — jury question**

It was a question for the jury (1) whether skid marks which ended approximately 50 feet from defendant's stopped automobile were marks made by plaintiff's car and (2) what speed the marks indicated.

APPEAL by plaintiff from *Wheeler, District Judge,* March 1969 Civil Session of PITT District Court.

This is a civil action to recover damages for personal injuries and property damages sustained by plaintiff on 1 March 1966 when his 1961 Oldsmobile automobile collided with defendant's 1950 Ford on U.S. Highway 13 near Buena-Vista in Bertie County, N. C. Plaintiff alleged defendant was negligent in unlawfully parking his automobile upon the paved and traveled portion of the highway at night without lights and in failing to give adequate warning of the hazard thereby created. Defendant denied negligence on his part and pleaded contributory negligence on the part of plaintiff in failing to keep a proper lookout, in driving at excessive speed, and in failing to keep his automobile under control when approaching defendant's stalled automobile, which defendant alleged was fully lighted.

Plaintiff offered evidence tending to show: At the scene of the collision U.S. Highway 13 runs generally north and south through a swampy, wooded area. The highway is paved with smooth asphalt

approximately 22-feet wide and has one lane for northbound and one lane for southbound traffic. About three-tenths of a mile north from the point of collision the highway passes through a crossroads known as Buena-Vista. Proceeding south from Buena-Vista the highway curves to the right and then straightens. The collision occurred on the straight portion of the highway south from the curve. Near the point of collision a small creek runs through a concrete culvert under the highway. The culvert has concrete abutments on each side, but there are no rails along the edge of the highway as it passes over the culvert. There was 22 feet between the two abutments. The posted speed limit is 60 miles per hour.

It had rained prior to the collision and the shoulders of the highway were wet, but the surface of the highway was dry and the weather was clear at the time of the collision. Plaintiff, with one passenger, was driving his car south along the highway. Defendant's automobile was stationary, sitting diagonally across the highway, the front of the car headed in a northeasterly direction and the rear in a southwesterly direction. Defendant was outside of the automobile and was looking for his cat.

On direct examination plaintiff testified:

"I was traveling at a speed of 55 miles per hour. I was near Beuna-Vista which is a small intersection consisting of two service stations, I believe. One on each side. It is simply a crossroads with service stations. I was between there and Windsor, N. C. I first saw the automobile owned by Mr. Atkeson — just as you pass through the intersection, about 50 yards further up, it is a curve. As I rounded that curve and straightened out, I saw this car parked cross-ways the road. It was nighttime. I did not see any lights burning on the vehicle. I first observed this automobile when I was approximately 250 foot from it. As soon as I realized what it was, I tried to stop before I hit it. The automobile was sitting cross-ways the road. The back of his car was more on my side of the road than it was on his. It was more room on the opposite side of the road so at first — I was still moving — I started to change lanes to see if I could go around that way but then I was afraid it would be considered my fault — crossing lanes — so I got back in my lane and tried my best to stop before I hit it. The back of his car was to my right and the front of his car was to my left. A portion of his car was in the left lane as I approached. About one third of the lengths of the car was in the left lane. The front wheels of his vehicle was in my left lane and was in what should have been his lane if he

was coming my way. The back wheels were in my lane. I first went to the left and then cut back in my own lane. After that, I hit his car, a glancing blow, because I skidded into him sideways. Once I hit him I slid back off the shoulder of the road which was wet. It had just been a heavy rain. The road was dry but the shoulder was wet and I went down the hill into a creek right beside a small bridge that didn't have rails. My car went into the water. . . . There were no lights on the car of Mr. Atkeson. There were none burning. There were no actual lights or reflectors on the side of his car as I approached it. His car had headlights and taillights but at the angle I was going — I was going straight into his side and there was no lights on his side. His headlights pointed to my left but they were not on. If he had reflectors, the rear of his car was turned far enough so I couldn't see it. I do not know whether his automobile was running but the motor was not running when I got out of the creek."

On cross-examination plaintiff testified:

"It is a straight road from the curve to where I hit the automobile. I did not see him before I came out of the curve. I don't know if I saw him at the exact moment I came out of the curve but after I rounded the curve I didn't see it until —. Just as I rounded the curve, I saw this vehicle down the road across the highway facing almost perpendicular to me. I don't know if I saw him at the exact moment I come out of the curve or if it was a few seconds after I come out. . . . When I first rounded this curve, I saw the car sitting there. When I saw the car, I applied brakes. I did not slam on the brakes. I eased on the brakes because I didn't — it was no lights on the car. The car was black and I thought it was moving. When I realized it wasn't moving, I slammed on brakes. It was just a second or two from the time I started easing on the brakes until I slammed on the brakes. The car was approximately 200 foot from me when I slammed on the brakes. At the time I started easing on the brakes, I don't know how far the car was from me. I can just guess the foot but my guessing — I could be 100 foot off. I would say it was 250 foot from the time I first saw —. I first attempted to make a left turn but just as my wheels crossed the center line, I saw there wasn't room enough for me to get by on that side either and so I changed back to my lane because I would rather to stay on my side of the road if I couldn't get by. There is a shoulder there. I do not know exactly how wide. I was skidding and could not drive off the paved portion. My brakes

was locked. I had control of the vehicle until I turned to go back in the right lane and then I still had control other than I couldn't stop it. My car went down into an embankment and into a creek."

Plaintiff's passenger, a witness for the plaintiff, testified:

"It was nighttime. The car in the road was black. The pavement was black. There were no lights burning on that automobile in the road.

\*    \*    \*    \*    \*

"After we come around the curve and got straightened out, I could see the automobile. I don't have any idea how far it was when I first saw it. Not too far because — I said it was night and we had to be almost on top of it."

This witness also testified that plaintiff was going 55 or 60 miles an hour and that plaintiff's car had just been inspected a day of two before and had good brakes and steering mechanism.

The highway patrolman who investigated the accident testified in substance: The shoulders of the road were level for approximately six feet on each side of the road. The distance from the point where the curve begins to straighten out to the point where he found the automobiles resting was approximately 1000 feet unobstructed. There were 300 feet of solid heavy black skid marks in the right-hand lane headed south. These marks ended approximately 50 feet north from the point of impact, and "on the south end of these skid marks they started fading out and going over into the left lane — scuff marks into the left lane like the vehicle was skidding sideways — and then they faded out and right up approximately three feet north of the Atkeson vehicle, three or four feet, there was several piles of dirt on the highway." The patrolman also testified that there was "enough room on either side of the highway on the shoulder to drive an automobile but not a whole lot of room to spare."

The operator of the wrecker who retrieved plaintiff's car from the water on the night of the collision testified that the shoulders on each side of the road were "very small," approximately three feet, and "not large enough for an automobile to go on the side of it at that point." He also testified there was not enough room to go around defendant's car and traffic was stopped until the wrecker moved it out of the way.

At close of plaintiff's evidence the court allowed defendant's motion for nonsuit, and plaintiff appealed.

*Pritchett, Cooke & Burch, by W. L. Cooke, for plaintiff appellant.*

*James, Speight, Watson & Brewer, by W. H. Watson, for defendant appellee.*

PARKER, J.

[1]   Plaintiff's evidence showing defendant left his unlighted car at night parked across both lanes of a two-lane highway, while defendant searched for his lost cat, was clearly sufficient to require submission of an issue as to defendant's actionable negligence. The nonsuit can be sustained, if at all, only on the ground that plaintiff's evidence so clearly establishes his own negligence as one of the proximate causes of his injuries that no other reasonable inference may be drawn therefrom. We do not agree with the trial court's conclusion that it does.

Bobbitt, J. (now C.J.), speaking for the Court in *Brown v. Hale,* 263 N.C. 176, 139 S.E. 2d 210, stated:

> "Judgment of involuntary nonsuit on the ground of contributory negligence should be granted when, and only when, the evidence, when considered in the light most favorable to plaintiff, establishes plaintiff's contributory negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. This rule, repeatedly restated, is clear. Its application, at times, is difficult. Complete reconciliation of all the decided cases would tax the ingenuity of the most discriminating analyst.
>    " '. . . no factual formula can be laid down which will determine in every instance the person legally responsible for a rear-end collision on a highway at night between a standing vehicle and one that is moving.' Stacy, C.J., in *Tyson v. Ford,* 228 N.C. 778, 781, 47 S.E. 2d 251. As stated by Seawell, J., in *Cole v. Koonce,* 214 N.C. 188, 191, 198 S.E. 637: 'Practically every case must "stand on its own bottom." ' "

[2]   Plaintiff's evidence considered in the light most favorable to him would support a finding that: He was driving his car within his proper lane of travel at a speed of 55 miles per hour within a 60 mile per hour speed zone. It was a clear night and the paved surface of the highway was dry. The brakes and the steering mechanism of his car were in good order. He first observed defendant's car when he was approximately 250 feet away. As soon as he saw it he applied but did not "slam on" his brakes, because he thought defendant's car was moving. When he realized it wasn't moving, he slammed on his brakes, at which time defendant's car was approximately 200

feet from him. He first attempted to pass to the left of defendant's car, but just as soon as he crossed the center line he saw there wasn't room enough to get by on that side either and so changed back into his own lane. There was a shoulder but by this time he was skidding and could not drive off the paved portion of the highway. His car skidded sideways into defendant's car, striking it a glancing blow.

[3-5]　Such findings would negative defendant's allegations that plaintiff was driving at an excessive speed, failed to keep a proper lookout, or failed to keep his car under control. The jury could find from plaintiff's evidence that he was operating within the posted speed limit and in compliance with the requirements of G.S. 20-141. His testimony as to when he first saw defendant's car negates any inference that he failed to keep a proper lookout. G.S. 20-131(a) required that plaintiff's head lamps under normal atmospheric conditions and on a level road "produce a driving light sufficient to render clearly discernible a person two hundred feet ahead." Plaintiff's lights met this requirement, since he saw defendant's car when it was 250 feet away. Plaintiff's inability to stop his vehicle within the radius of his lights cannot be considered contributory negligence *per se*. G.S. 20-141(e); *Bass v. McLamb*, 268 N.C. 395, 150 S.E. 2d 856.

[6]　While the evidence as to the skid marks would indicate plaintiff was driving at a speed greater than either he or his passenger testified to, the evidence would not compel a finding that the skid marks had in fact been made by plaintiff's vehicle. The clear skid marks ended approximately 50 feet from defendant's vehicle, and although a strong inference may arise that the marks were made by plaintiff's car, whether in fact they were and what speed they indicate were questions for the jury. Plaintiff's evidence was also conflicting on whether there was sufficient room on the shoulder of the road for his car to pass defendant's car. Such discrepancies and contradictions in plaintiff's evidence are matters for the jury and not the court to resolve. *Coleman v. Burris*, 265 N.C. 404, 144 S.E. 2d 241; *Beasley v. Williams*, 260 N.C. 561, 133 S.E. 2d 227.

[2]　While plaintiff's own evidence would clearly support a jury finding that plaintiff was guilty of contributory negligence, we hold that it did not show that plaintiff was contributorily negligent as a matter of law. In view of this holding we do not deem it necessary to pass upon appellant's remaining assignments of error, which relate to rulings admitting or excluding evidence, since these questions may not recur upon a new trial.

The judgment of nonsuit is

Reversed.

MALLARD, C.J., and BRITT, J., concur.