TINA M. SCOTT, EXECUTRIX OF THE ESTATE OF W. H. SCOTT, DECEASED V. WILLIAM THOMAS CLARK AND CHARM P. CLARK.

(Filed 17 January 1964.)

**1. Automobiles § 21—**

The owner of an automobile is not an insurer of the safety of the tires on the vehicle but is required to use reasonable care to see that each tire is in a safe and proper condition for operation on the highways, and may be held liable for injuries proximately resulting from a defective condition of a tire when he has actual or implied knowledge of such unsafe condition, but otherwise an accident resulting from a blowout is usually considered unavoidable.

**2. Automobiles § 41r— Evidence held sufficient to present question for jury as to negligence in operating vehicle with defective tire.**

Evidence tending to show that one of the tires on defendant's car had imprinted on it the words "mobile home tire", that such tires were intended to be used on mobile homes exclusively and that they did not have as much insulation on the cord and insulation between the plies as tires manufactured for use on motor vehicles, that the tire had only 15 or 20 per cent of the tread on it at the time of the collision, that it had heat and impact breaks in the center of the tread and in the side wall, that it had been bought as a used tire almost three years prior to the collision in suit, and that the collision resulted when the tire blew out when the vehicle operated by plaintiff's testate was approaching on the highway from the opposite direction and was distant only by a car length, causing the vehicles to collide on the left of defendant's center of the highway, *is held* sufficient to raise the question whether defendant knew or in the exercise of reasonable care should have known of the dangerous condition of the tire and should have foreseen that consequences of a generally injurious nature would result from the operation of the vehicle on the highway with the tire in such condition.

APPEAL by plaintiff from *McKinnon, J.,* June 1963 Session of CHATHAM.

Civil action to recover damages for the alleged wrongful death of plaintiff's testate. G.S. 28-173.

Plaintiff's testate, W. H. Scott, met his death on 29 June 1961 at about 3:45 p.m. as a result of a collision of motor vehicles, when a

1950 Chevrolet pickup truck operated by William Thomas Clark in an easterly direction on U. S. Highway 64, a two-lane highway, about 1300 feet east of its intersection with N. C. Highway 55 in Wake County, crossed to its left of the white center line on the highway and its left front collided with the left front of a 1956 Chevrolet pickup truck, which W. H. Scott was driving in a westerly direction on the same highway. The hard-surfaced part of the highway was about twenty feet wide and on each side were shoulders six feet wide. At the scene of the collision, the maximum speed limit was 55 or 60 miles an hour. The weather was fair and the highway was dry. During the trial the parties stipulated that the 1950 Chevrolet pickup truck was owned by the defendant Charm P. Clark, and that at the time of the collision the defendant William Thomas Clark was operating it as agent of Charm P. Clark and within the scope of his agency.

Plaintiff alleges in her complaint and amendment thereto that defendants were negligent in the operation of the 1950 Chevrolet pickup truck, which proximately caused her testate's death, in the following respects: One, reckless driving in violation of G.S. 20-140; two, driving at a speed greater than was reasonable and prudent under the existing conditions, in violation of G.S. 20-141 (a) ; three, failing to keep a proper lookout; four, failing to keep it under proper control; five, driving into its left lane of traffic without ascertaining that it could be done in safety; six, driving into its left lane of traffic directly in front of the approaching pickup truck operated by her testate; seven, driving with steering equipment in a worn and defective condition; eight, driving it equipped with old, worn, defective and unsafe tires, when each of the defendants had, or by the exercise of ordinary care should have had, knowledge of the defective and unsafe condition of the tires; and nine, failing to give to her testate's approaching pickup truck one-half of the main-traveled portion of the highway as nearly as possible, in violation of G.S. 20-148.

Defendants in their joint answer deny that they were negligent in any respect. As a further answer and defense, they allege that William Thomas Clark was operating the 1950 Chevrolet pickup truck at a reasonable rate of speed, that it was in good repair and condition according to the best of their knowledge, and that as he came near Scott's approaching pickup truck, the left front tire of his pickup truck suddenly blew out, causing it to veer suddenly to its left and into the approaching Scott pickup truck causing a collision, and that the collision was a pure accident caused by no negligence on their part.

Plaintiff and defendants offered evidence. The jury found by its verdict that the death of plaintiff's testate was not caused by the negligence of defendants as alleged in the complaint.

From a judgment, in accord with the verdict, that plaintiff take nothing by this action and taxing her with the costs, she appeals.

*Barber & Holmes and Dupree, Weaver, Horton & Cockman by Jerry S. Alvis for plaintiff appellant.*

*Teague, Johnson & Patterson by C. Woodrow Teague and Ronald C. Dilthey for defendant appellees.*

PARKER, J.   The court charged the jury in part as follows:

"The plaintiff further alleged that the defendants did drive the pickup on the highway while the steering gear thereof was in a worn and defective condition and did operate with tires that were old, worn and defective and unsafe.

"(As to those last two specifications of negligence, gentlemen, with respect to operating with defective steering gear and operating with defective, worn and unsafe tires, I instruct you that there is not here sufficient evidence of any defect of steering condition or of tires existing prior to the accident and known to the defendants or should have been known to them in the exercise of reasonable care, for you to consider and for those two specifications of negligence to be submitted to you. However, the plaintiff contends that the defendant was negligent in all of the other respects alleged, or at least some of them, and that you should be so satisfied from the evidence and by its greater weight.)"

Plaintiff assigns as error the part quoted above in parentheses.

During the trial and before plaintiff rested, the parties stipulated that the tire on the left front wheel of the Chevrolet pickup truck owned by Charm P. Clark was manufactured by Mansfield Tire Company in June 1956, and that on 6 August 1958 Charm P. Clark bought it as a used tire from the Siler City Tire Company in Siler City, North Carolina.

Plaintiff's evidence tended to show the following facts: Her testate about 3:45 p.m. on 29 June 1961 was driving a Chevrolet pickup truck in a westerly direction on U. S. Highway 64 at a speed of between 40 and 45 miles an hour where the maximum speed limit was 55 or 60 miles an hour. Meeting him on the highway was a Chevrolet pickup truck driven by William Thomas Clark at a speed of about 35 or 40 miles an hour. Just before the pickup trucks met, there was a loud noise and the Clark pickup truck veered to the left, and its left front part collided with the left front part of the Scott pickup truck. As a result of the collision, plaintiff's testate was instantly killed.

The court found that Sion D. Jennings, a witness for plaintiff, was an expert in the manufacture and repair of automobile tires. He testified in substance, except when quoted, as follows: The Mansfield tire that was on the left front wheel of the Clark pickup truck at the time of the collision, and which is marked defendants' Exhibit 6, has imprinted on it the words "mobile home tire." "Mobile home tires are manufactured and marketed to haul mobile homes exclusively. * * * There is a difference in the manufacture of a mobile home tire and a tire to be used on wheels of a motor vehicle. There is not as much insulation to the cord and there is not as much insulation between the plies of the tire." This Mansfield tire has between 15 and 20 per cent of tread on it; it has not been recapped. It has five holes in it; one in the crown, another in the bead, and the other three here and here and here, pointing them out to the jury. There are four patches in the inner tube, which has been marked defendants' Exhibit 1.

Charm P. Clark, testifying in his own behalf, said on cross-examination: "I recall that I bought the tire [the Mansfield tire on the left front wheel of his pickup truck] from Mr. Whitehead in Siler City, and the date of that was August 6, 1958. At the time I bought it it was put on by Mr. Whitehead in Siler City. The tube was put in it from the other tire. I did not put a new tube in at the time I put the Mansfield tire on. The tube was in good condition. It had one or two patches on it. I had used that tube at that time approximately two years. It had been used approximately two years, and that was the same tube in the Mansfield tire the date of the collision. It had been in there continuously."

William T. Clark, testifying in his own behalf, said on direct examination: "On June 29, 1961, a Thursday, I believe, I took my father's pickup truck and started toward Raleigh. * * * I had driven that truck before that day, at least three times a week. The condition the truck was in with respect to brakes and steering equipment was all O. K. * * * As I approached this point where the accident occurred, I was driving on the right side of the road. As to the first thing that happened out of the ordinary, the tire blew, which caused me to swerve over. The left front tire blew out. I was on my right side of the road at that time. * * * At that time, I was going approximately 40 or 45 mph. When the tire blew out, the truck I was driving swerved into the oncoming traffic on the lane. When the tire blew, I attempted to pull it back to the right but I just could not do it. I pulled into the other lane. I attempted to pull it to the right, but I kept going to the left side. I attempted to pull it to the right, but I just couldn't do it. At the time the tire blew out on the left front wheel of my truck, the

Scott truck was on his side of the road approaching me. * * * The left front of my truck and the left front of the Scott truck collided." He testified on cross-examination: "When I had what I call a blowout, my distance from the Scott truck was then a car-length or a car-length-and-a-half. I am positive of that."

The court found that W. M. Shaffer, a witness for defendants, was an expert in automobile tire construction and tire failure. He testified in substance on direct examination that he examined the Mansfield tire that blew out, and that it had a heat and impact break practically in the center of the tread all the way through the tire. In addition, he found another break through the tire on the sidewall. In describing a heat and impact break, Shaffer testified: "It would break the cords on the inside and they will be damaged sometimes for a week or longer before the actual blow. That is commonly known as a road hazard, the one in the center of the tread, which is the one I am describing." In response to hypothetical questions, Shaffer expressed the opinion that there was a blowout in the heat and impact break of the tire before the collision. He testified on cross-examination in substance that this Mansfield tire had on it the words "mobile home tire."

The allegation in plaintiff's complaint that defendants were negligent in operating the pickup truck with old, worn, defective and unsafe tires, when each of them had, or by the exercise of ordinary care should have had, knowledge of the defective and unsafe condition of the tires, which proximately resulted in her testate's death, and the evidence and stipulations above set forth present a factual situation presenting in terms of realities the abstract legal principle that although the owner or driver of a motor vehicle does not at common law owe to other users of the highway the absolute duty to keep the tires, and each one of them, on his vehicle or the vehicle driven by him in a safe and proper condition, he is, nevertheless, required by law to use reasonable care to see that the tires, and each one of them, are in a safe and proper condition for operation on the highway, and is generally held liable for an injury or death which proximately results from a defective condition of the tires, or any one of them, of which condition the owner or operator had knowledge express or implied. Where there is no evidence that the owner or operator had knowledge or should have had knowledge of the defective condition of the tires, or any one of them, by a reasonably careful inspection, the resulting accident is usually considered to have been unavoidable, and there is no liability. 8 Am. Jur. 2d, Automobiles and Highway Traffic, sec. 703; Annotations, 24 A.L.R. 2d, p. 177, and 79 A.L.R. 1218. The following cases involving injuries alleged to have been due to defective tires, although

the factual situations are variant from the facts in the instant case, support the general rule: *Sherman v. Frank,* 63 Cal. App. 2d 278, 146 P. 2d 704; *Dostie v. Lewiston Crushed Stone Co.,* 136 Me. 284, 8 A. 2d 393; *Zarrillo v. Stone,* 317 Mass. 510, 58 N.E. 2d 848; *Delair v. McAdoo,* 324 Pa. 392, 188 A. 181; *Saxon v. Saxon,* 231 S.C. 378, 98 S.E. 2d 803.

In *Delair v. McAdoo, supra,* the Supreme Court of Pennsylvania said:

> "It is common experience that the blow-out of an automobile tire is a hazardous occurrence. A blow-out has a known tendency to cause the vehicle to swerve and become unmanageable, rendering possible injury to others due to the lack of control. See *Seligman v. Orth,* 205 Wis. 199, 236 N.W. 115, 117. In *Klein v. Beeten,* 169 Wis. 385, 172 N.W. 736, 737, 5 A.L.R. 1237, the court stated:
>
> " 'It is familiar knowledge that the blow-out of the * * * tire of an automobile is a dangerous occurrence, the degree of danger of course depending upon the rate of speed, and, we apprehend, somewhat upon the character of the car.'
>
> "While blow-outs may result from untoward accidents for which no responsibility exists such as from spikes and other causes [citing authority], where they result from defects in the tire arising from age or wear, there seems little doubt that responsibility should attend the dereliction of the vehicle owner in using such equipment, if the faults would be disclosed on reasonable inspection."

In Huddy, The Law of Automobiles, Vol. 3-4, p. 127 *et seq.* (1931), it is stated:

> "Generally speaking, it is the duty of one operating a motor vehicle on the public highways to see that it is in reasonably good condition and properly equipped, so that it may be at all times controlled, and not become a source of danger to its occupants or to other travelers.
>
> "To this end, the owner or operator of a motor vehicle must exercise reasonable care in the inspection of the machine, and is chargeable with notice of everything that such inspection would disclose."

In the Restatement, Torts, sec. 307, it is stated: "It is negligence to use an instrumentality, whether a human being or thing, which the actor knows or should know to be so incompetent, inappropriate, or de-

fective, that its use involves an unreasonable risk of harm to others."
In the same section of this text it is pointed out that there are certain
relations, of which that of Master and Servant is an instance, in which
the actor is required to take reasonable care to ascertain by inspection
the actual character of a thing turned over to him by even a careful
person, and that even in the absence of such a special relation, there
is a similar duty of inspection where the work in hand threatens ser-
ious danger unless the instrumentality used is appropriate and in good
condition, and then it goes on to state: "* * * the duty of preparation
includes a generally operative duty of inspection where the circum-
stances are such as would lead a reasonable man to believe that an
inspection is necessary, as where the thing used is one likely to de-
teriorate by previous use or other causes or where the actor has some
other reason for suspecting that the article may be defective."

There is no evidence that the steering gear of the Clark pickup truck
was in a worn and defective condition, and the judge correctly instruct-
ed the jury that he would not submit the allegation of negligence in
plaintiff's complaint in respect thereto to the jury.

However, an entirely different factual situation exists in respect to
the left front tire on the Clark pickup truck. The parties stipulated
that it was manufactured by Mansfield Tire Company in June 1956,
and that on 6 August 1958 Charm P. Clark bought it as a used tire.
The evidence of plaintiff and defendants is that this Mansfield tire is
a "mobile home tire," and that such words are imprinted on it. Such
evidence would permit a reasonable inference by the jury that an
ordinary inspection of this tire by the defendants, or either one of
them, would disclose that it was a "mobile home tire." Plaintiff's evi-
dence and defendants' evidence favorable to her and the stipulations
would permit a jury to find that this "mobile home tire" had only 15 or
20 per cent of tread on it at the time of the collision, had five holes in
it at such time, was old, worn, dangerous and unsafe for use on a pick-
up truck on the highway, was not manufactured and marketed for use
on a motor vehicle on the highway, and that such old, worn, dangerous
and unsafe condition of this "mobile home tire" on the left front wheel
of the Clark pickup truck was known to Charm P. Clark or should
have been known to him by a reasonable inspection of it, and was also
known to William Thomas Clark, the operator, or should have been
known to him by a reasonable inspection of it, because he testified he
"had driven that truck before that day, at least three times a week,"
that the defendants in the exercise of the reasonable care of an ordi-
narily prudent person should have foreseen that consequences of a
generally injurious nature would result from the operation of the Clark

pickup truck due to such condition of this "mobile home tire" on its left front wheel, that this "mobile home tire" on the left front wheel of the Clark pickup truck blew out by reason of such condition, which caused it to veer into its left lane of traffic and to collide with the Scott pickup truck, proximately resulting in the death of plaintiff's testate.

The trial judge committed prejudicial error against plaintiff in instructing the jury that there was not sufficient evidence of any defect of tires existing prior to the accident and known to the defendants or should have been known to them in the exercise of reasonable care for them to consider, and that he would not submit the allegation of negligence in respect to the tires in plaintiff's complaint to them. Such prejudicial error entitles plaintiff to a

New trial.