HAROLD K. GREGORY v. ANN J. ADKINS

No. 7018SC61

(Filed 25 February 1970)

**1. Negligence § 30— issue of negligence — nonsuit**

Judgment of nonsuit on the issue of negligence should be sustained if (1) the evidence taken in the light most favorable to plaintiff fails to show negligence on the part of defendant or (2) plaintiff's own evidence establishes contributory negligence as the sole reasonable conclusion.

**2. Negligence § 35— contributory negligence — nonsuit**

A judgment of nonsuit on the ground of plaintiff's contributory negligence can be granted only when plaintiff's evidence so clearly establishes his own negligence as one of the proximate causes of his injury that no other reasonable conclusion can be drawn.

**3. Automobiles § 83— pedestrian's contributory negligence — stalled automobile — nighttime — nonsuit**

Plaintiff's evidence (1) that he voluntarily stood in the lane of a heavily traveled highway in the nighttime in front of a stalled black automobile, the major portion of which was on the highway, (2) that he observed three vehicles go by him at high speed and within three or four feet from where he was standing, (3) that he knew that he was in danger and could remove himself to a place of safety, and (4) that he was injured when defendant's automobile struck the rear of the stalled automobile and caused it to be pushed into him, *held* to establish plaintiff's contributory negligence as a matter of law; and the trial court properly granted defendant's motion for nonsuit.

APPEAL by plaintiff from *Gambill, J.,* 17 August 1969 Session of GUILFORD Superior Court.

This is a civil action in which plaintiff seeks to recover damages for personal injuries sustained by him at approximately 11:30 p.m. on 20 October 1967 when the stalled automobile in front of which he was standing was struck from the rear and pushed into him by an automobile being driven by the defendant. Plaintiff alleged negligence on the part of the defendant in failing to keep a proper lookout, failing to keep her vehicle under reasonable control, driving at a speed greater than was reasonable and prudent under existing conditions, and in other respects. Defendant answered, denying negligence on her part, pleading contributory negligence on the part of the plaintiff, and counterclaiming against the plaintiff. The defendant also pleaded a cross action against one Kenneth R. Sawyers, who was made an additional party defendant and who was the owner-operator of the stalled automobile in front of which plaintiff

was standing. At the commencement of the trial defendant submitted to a judgment of voluntary nonsuit in her cross action against Sawyers.

Plaintiff introduced evidence to show in substance the following facts: The collision occurred on U.S. Highway 29 approximately three miles north of Greensboro and near the point where the ramp leading from Hicone Road enters the northbound lanes of Highway 29. At this point Highway 29 is a four-lane highway running north and south with two northbound lanes and two southbound lanes divided by a grass median. Hicone Road runs east and west and passes over Highway 29 on an overpass bridge which is approximately four to five hundred feet south of the point of collision. South from the point of collision Highway 29 passes over a small hill, the hillcrest being in the general vicinity of the Hicone Road overpass. Traveling north from the hillcrest toward the point of collision Highway 29 runs slightly downgrade to and beyond the point of collision, the bottom of the grade being approximately 1500 feet further north from the point of collision. South from the point of collision Highway 29 is straight all the way back to the city limits of Greensboro. The highway is not illuminated in any way and the posted speed limit is 60 miles per hour.

Southwardly from the point where the Hicone Road ramp enters and merges into the northbound lanes of Highway 29, the ramp and the Highway are separated by a raised concrete strip with metal posts sitting in the concrete. This concrete strip extends approximately 30 feet south from the point where the ramp and Highway 29 merge. At the south end of the concrete strip there is a curb which runs 25 to 30 feet further south, starting about one foot from the eastern edge of the pavement of Highway 29 and slanting away from the pavement as it runs south. At the south end of the curb there is a 10 to 12 foot grass shoulder which runs along the eastern edge of the pavement of the outside northbound lane of Highway 29.

Plaintiff testified: On the night of the accident he was driving his car north on Highway 29 when he had a flat tire. He pulled over to the side and stopped about 275 to 300 feet south from the intersection of the Hicone Road ramp and Highway 29. He did not have a lug wrench, so he tried to flag down a passing motorist for assistance. A Mr. Sawyers, driving a black 1951 Chevrolet, stopped to help plaintiff. He first stopped on the east side of Highway 29 about 125 feet from plaintiff's car. Plaintiff noticed that the left side of the Sawyers car was in the highway and suggested that Sawyers move his car off the highway "to avoid an accident." However, the

Sawyers car stalled. Plaintiff said, "Let's push it," and with Sawyers at the wheel, plaintiff began pushing the car northwardly down Highway 29. The right wheels were off the pavement on the shoulder of the road, and the left wheels were on the pavement. The car rolled down the grade until Sawyers stopped it at a point near the raised concrete strip which separates Highway 29 from the ramp leading from Hicone Road. When it stopped, the right wheels of the Chevrolet were about two feet off the pavement, and the remainder of the car was in the highway. Sawyers got out of the car and began to adjust something under the hood. Plaintiff got in the car and tried to start it, but without success. Plaintiff then got out and stood in front of the car with Sawyers. Plaintiff stood in front of the left front headlight, the one closest to the center of Highway 29. Plaintiff watched several vehicles, two cars and a tractor-trailer, drive by the stopped car at high speed, some 60 to 65 miles per hour. The last thing plaintiff remembers is the tractor-trailer passing. One to two minutes elapsed from the time Sawyers stopped until plaintiff blacked out. Plaintiff did not remember hearing any horn, or screeching brakes, or seeing any lights that might have come from defendant's car. The headlights and taillights on the Sawyers car were burning at all times before the collision.

On cross examination plaintiff testified:

"I knew it was dangerous. As a matter of fact, I was standing there — I wasn't helping him except for the time I got under the wheel — the only thing I was doing was looking up and down the road to see if anything was coming. I was standing there some six, possibly seven, feet away from the center of the two northbound lanes of travel. . . .

". . . When I was standing six or seven feet away from the center line, the car was sticking out in that right lane three feet or so. Then I am only three or four feet, the distance of about like this, as those two cars went by me at speeds of sixty or sixty-five miles per hour. As to whether I didn't say anything to Mr. Sawyers about getting out of the road, I didn't have a chance to. That is what I was going to say to him. I don't recollect what I started to say; but apparently that was what I was going to say.

". . . As to whether I ever did help him, he didn't ask me. The only thing he asked me was to get under the wheel and try to start the car. There was no reason why I couldn't have stepped off the road to a place of safety. With regard to standing three of four feet from automobiles going 60 or 65 miles an

hour, I felt obligated. As to whether there was any reason I couldn't have done the same service to him by stepping over on the shoulder of the road, there was no use leaving him by himself. As to whether I could have stepped over to the other side and been close to him on the shoulder, I still would have got him, maybe.

"It sure was dangerous out there anywhere, then. And I knew it."

The patrolman who investigated the accident testified: He found the Sawyers Chevrolet in a wrecked condition straddling the concrete strip between Highway 29 and the ramp and he found defendant's car, a 1962 Mercury, also in a wrecked condition, just at the rear of the Chevrolet and in the outside northbound lane of Highway 29. Glass and other debris was scattered over a large area around the vehicles, the majority of the debris being in the outside lane of Highway 29. Five feet of skid marks in the outside lane of Highway 29 led up to the rear of defendant's car. The lights of the Chevrolet were not burning when he first arrived, and the light switch was in the off position.

At the close of plaintiff's evidence, the court granted the defendant's motion for judgment of involuntary nonsuit, and defendant then took a voluntary nonsuit on her counterclaim against plaintiff. Plaintiff appealed.

*Schoch, Schoch & Schoch by Arch K. Schoch, Jr., for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by Richmond G. Bernhardt, Jr., for defendant appellee.*

PARKER, J.

**[1]** Appellant's sole assignment of error is directed to the granting of defendant's motion for nonsuit. The judgment of nonsuit should be sustained if (1) the evidence taken in the light most favorable to plaintiff fails to show negligence on the part of defendant, or (2) plaintiff's own evidence establishes contributory negligence as the sole reasonable conclusion. *Price v. Miller,* 271 N.C. 690, 157 S.E. 2d 347. We find it unnecessary to resolve both of these issues for the determination of this appeal. Assuming *arguendo* that plaintiff's evidence was sufficient to present a case for the jury on the issue of defendant's negligence, we hold that nonsuit was proper in any event because plaintiff's own evidence established his contributory negligence as a matter of law.

[2, 3]    A judgment of nonsuit on the ground of the plaintiff's contributory negligence can be granted only when the plaintiff's evidence, taking it to be true and considering it in the light most favorable to him, resolving all contradictions therein in his favor, and giving him the benefit of every legitimate inference in his favor which can be reasonably drawn therefrom, so clearly establishes his own negligence as one of the proximate causes of his injury that no other reasonable conclusion can be drawn. *Anderson v. Carter,* 272 N.C. 426, 158 S.E. 2d 607. Considering plaintiff's evidence in the manner prescribed by the foregoing well-established rule, we are of the opinion and so hold that it leads inescapably to the conclusion that he did not use that care for his own safety which an ordinarily prudent man in the same circumstances would have used, and that his failure so to do was one of the proximate causes of his injuries. He voluntarily stood in the main traveled portion of a heavily-traveled high speed highway in the nighttime, in front of a stalled black vehicle, the major portion of which was within the highway. Even assuming that the lights on the stalled vehicle were burning, thereby resolving the conflict in evidence in that regard in plaintiff's favor, a clear and obvious danger still remained that a fast moving vehicle might collide with the rear of the stopped car and that a person standing immediately in front thereof would be injured. Nevertheless, plaintiff voluntarily placed himself, and for an appreciable period of time remained, in this position of obvious peril. During this time he observed three vehicles go by the stalled automobile at high speed and only three or four feet from the place plaintiff was standing. Plaintiff himself testified that he knew his danger and that there was no reason he could not have stepped off the road to a place of safety.

*Underwood v. Usher,* 261 N.C. 491, 135 S.E. 2d 201, cited by appellant, is distinguishable on its facts. The evidence in that case disclosed that the plaintiff in that case and two companions were engaged in pushing a vehicle on the highway when it was struck from behind. The road was straight and level, the collision occurred in a residential section, street lights were burning and visibility was good, and there was no heavy traffic. The trial court judgment overruling motion for nonsuit was sustained. Our Supreme Court speaking through Parker, J., (later C.J.) said: "We believe that fair-minded men could reasonably draw from plaintiff's evidence a legitimate conclusion that plaintiff did not voluntarily place himself in a position of peril known to him and voluntarily continue therein

and that he was free from contributory negligence." In the case before us we are compelled to come to the opposite conclusion.

The judgment of nonsuit here appealed from is

Affirmed.

CAMPBELL and HEDRICK, JJ., concur.