DORIS Q. WHALEY, ADMINISTRATRIX OF THE ESTATE OF RESSIE WHALEY, DECEASED v. EDWARD R. ADAMS

No. 758SC163

(Filed 7 May 1975)

Automobiles § 76— overturned vehicle in highway — contributory negligence of motorist striking it

In an action to recover damages for injuries sustained by plaintiff's intestate in an automobile collision, the trial court erred in denying defendant's motions for directed verdict and judgment n.o.v. where plaintiff's evidence tended to show that the accident occurred at 3:00 a.m., the weather was fair, plaintiff's intestate had consumed one beer, the road was on a decline for 800-900 feet and straight, intestate's lights were burning and he was going 45-50 mph in his right-hand lane of travel, defendant's car was dark green, its lights were burning, though it was overturned, and it was "framed" by the lights of a third motorist's car, and as intestate approached the wrecked vehicle he did not decrease his speed nor change his direction.

APPEAL by defendant from *Rouse, Judge*. Judgment entered 15 November 1974 in Superior Court, WAYNE County. Heard in the Court of Appeals on 17 April 1975.

This is an action to recover damages for injuries sustained by plaintiff's intestate as the result of a collision between two motor vehicles. Plaintiff alleged that the driver of defendant's vehicle was negligent in that he failed to give adequate warning to oncoming motorists of his disabled vehicle which had overturned in the highway in the nighttime.

Plaintiff's evidence, pertinent to decision, tends to show:

Defendant's son, Billy Albert Adams (Adams), was operating defendant's dark green Pontiac with defendant's permission at the time of the accident. Around 3:00 a.m. on 26 January 1969, Adams, intestate, and Linwood Martin were at the County Line Grill (located apparently at the Wayne County-Lenoir County Line). Shortly thereafter, Adams left on Highway 55 going in a westerly direction toward Seven Springs. After traveling one-quarter to one-half mile, the Adams vehicle ran off the road at approximately 55-60 mph, turned over, and came to rest on its top, blocking the left lane of Highway 55 and its rear end protruding from one to two feet into the right lane of travel. The Pontiac was almost perpendicular (off about 15 degrees) to the highway, with its lights, both front and back, burning. Adams left the Pontiac and obtained the aid of Mr. Gibbs, who lived 50-75 yards back toward the County Line Grill, in going for a wrecker. Mr. Gibbs testified that as they came by the Pontiac, traveling west, he could see the Adams car "framed" by the lights of Linwood Martin's car and that the lights of the Adams car were burning.

Linwood Martin testified: The weather was fair. He left the grill about five minutes after Adams left and saw the overturned Adams car some 200-250 feet before he got to it; that the lights were on. He drove onto the shoulder of the highway, proceeded around the overturned car, then turned around and drove back in the east-bound traffic lane to within 10-12 feet of the wreck with his lights shining into defendant's car. Shortly thereafter, Adams and Gibbs came by going to Seven Springs (about ½ mile away) to get a wrecker. After they left he saw the vehicle operated by intestate approaching some 200-400 feet away with its headlights burning. Intestate was traveling approximately 45-50 miles per hour and as he approached defendant's car, he did not decrease his speed or change his direction. The left front of the vehicle operated by intestate collided with the rear end of defendant's car and came to a stop about 100 feet

Whaley v. Adams

down the road in a ditch. The road was straight on a slight de-
cline for 800-900 feet before getting to defendant's car.

Intestate was taken to a hospital where he was treated for
two weeks. His doctor testified that intestate told him that he
thought that he had been in an accident and that he had drunk
one beer. (Intestate died approximately one year later from
causes unrelated to the accident.)

At the close of all the evidence, defendant moved for a di-
rected verdict. The motion was denied. The jury answered the
issues of negligence and contributory negligence in favor of
plaintiff and assessed damages in the amount of $2,500. Defend-
ant then moved for judgment nothwithstanding the verdict on
the grounds that intestate was contributorily negligent as a mat-
ter of law and that Adams was not negligent. The motion was
denied and from judgment entered on the verdict, defendant
appealed.

*Jeffress, Hodges, Morris & Rochelle, P.A., by Thomas H.
Morris, for the plaintiff appellee.*

*Dees, Dees, Smith, Powell & Jarrett, by William W. Smith,
for defendant appellant.*

BRITT, Judge.

Defendant contends the court erred in denying his motions
for directed verdict and judgment n.o.v. on grounds that plain-
tiff failed to show actionable negligence on the part of Adams,
and plaintiff's own evidence established intestate's contrib-
utory negligence as matter of law.

Assuming, *arguendo,* that Adams was negligent, we think
the evidence clearly establishes contributory negilgence on the
part of plaintiff's intestate in that he failed to keep a proper
lookout and failed to keep his vehicle under proper control.

On the question of contributory negligence, Justice Stacy
(later Chief Justice), speaking for the court in *Construction Co.
v. R. R.,* 184 N.C. 179, 181, 113 S.E. 672 (1922), said:

> The plaintiff's negligence, in order to bar a recovery
> in an action like the present, need not be the *sole* proxi-
> mate cause of the injury, for this would exclude the idea of
> negligence on the part of the defendant, as in any legal
> sense material or significant. It is sufficient if his negli-

Whaley v. Adams

gence is a cause, or one of the causes, without which the injury would not have occurred. If the plaintiff's negligence be the sole and only cause of the injury, it would not be contributory negligence at all, but rather the source of a self-inflicted injury.

In the case at bar plaintiff's evidence tends to show: It was 3:00 a.m. and the weather was fair. Intestate had consumed one beer. The road was on a decline for 800-900 feet and straight. Intestate's lights were burning and he was going 45-50 mph in his right-hand lane of travel. Defendant's car was dark green, its lights were burning and it was "framed" by the lights of Linwood Martin's car. As intestate approached the wrecked vehicle he did not decrease his speed nor change his direction.

While there is no evidence that intestate actually saw defendant's car prior to impact, " . . . [i]t is the duty of the driver of a motor vehicle not merely to *look*, but to *keep an outlook* in the direction of travel; and he is held to the duty of seeing what he ought to have seen". *Wall v. Bain*, 222 N.C. 375, 379, 23 S.E. 2d 330 (1942). The law charges a nocturnal motorist, as it does every other person, with the duty of exercising ordinary care for his own safety. *Carrigan v. Dover*, 251 N.C. 97, 110 S.E. 2d 825 (1959); *Chaffin v. Brame*, 233 N.C. 377, 64 S.E. 2d 276 (1951).

We further note the case of *Hines v. Brown*, 254 N.C. 447, 119 S.E. 2d 182 (1961), in which the Supreme Court held that a motion for involuntary nonsuit was properly granted on the ground that plaintiff's evidence established contributory negligence as a matter of law. We think the showing of contributory negligence was considerably stronger in the instant case than was the showing in *Hines*.

For the reasons stated, we hold that the trial court erred in denying defendant's motions. The judgment appealed from is

Reversed.

Judges PARKER and VAUGHN concur.