THELMORE THOMAS, Plaintiff v. RANDOLPH DELOATCH, Defendant and Third Party Plaintiff v. MINNIE E. FUTRELL and DAVID LEE GATLING, Third Party Defendants

RUFUS LONG, Plaintiff v. RANDOLPH DELOATCH, Defendant and Third Party Plaintiff v. MINNIE E. FUTRELL and DAVID LEE GATLING, Third Party Defendants

No. 796SC677

(Filed 4 March 1980)

1. **Automobiles § 75.2— passenger in disabled vehicle—contributory negligence as jury question**

   In an action to recover for injuries sustained by plaintiff who was struck by defendant's car while he was standing near a disabled vehicle on the side of a road, evidence as to plaintiff's contributory negligence raised a question for the jury where the evidence was contradictory, conflicting and inconsistent as to whether plaintiff continued to ride as a passenger in a car, on which he was responsible for the maintenance, knowing it had transmission problems; whether he instructed the driver to pull to the side of the road rather than into two driveways they passed thus creating a situation where a portion of the car was possibly still on the main portion of the highway; whether he was placed on notice by a previous sideswipe that the car was in a dangerous position but did nothing to attempt to move the car before the second collision; whether, when he went to the rear of the disabled vehicle, he placed himself in a position of peril and failed to keep a reasonable and proper lookout for oncoming traffic; and whether plaintiff's intoxication contributed to the accident.

2. **Automobiles § 83— pedestrian standing near highway—no contributory negligence as matter of law**

   There was no merit to defendant's contention that one plaintiff was contributorily negligent as a matter of law in talking to his cousin while standing near but not on the highway in a lane beside his home and there being hit by a disabled vehicle which was knocked into him by the impact when defendant's oncoming car hit it.

3. **Automobiles § 11.4— striking disabled vehicle—instructions proper**

   In an action to recover for injuries sustained when defendant struck a disabled vehicle, the trial court's instructions on G.S. 20-134 and G.S. 20-161 concerning leaving a disabled vehicle on a highway and displaying lights on such disabled vehicle were proper.

4. **Automobiles § 11.4— disabled vehicle parked on side of road—disability due to plaintiff's negligence—plaintiff entitled to instruction on exculpatory provision of statute**

   There was no merit to defendant's contention that plaintiff was not entitled to an instruction on the exculpatory provision of G.S. 20-161 prohibiting

the parking of a vehicle upon a highway except in cases of disablement because the disability was due to plaintiff's own wrongful conduct, since the statute does not provide for such distinction.

**5. Automobiles § 11.4— emergency parking on shoulder of road**

G.S. 20-161 prohibiting the parking or leaving of a vehicle on "the paved or main traveled portion of any highway" does not prohibit the emergency parking of a vehicle on the shoulder of a highway, paved or otherwise, which is outside the main traveled part.

**6. Automobiles § 87.5— intervening negligence of other driver—instructions proper**

The trial judge properly instructed on insulating negligence where he stated that, in order to insulate the negligence of one defendant, the intervening negligence of the second defendant must break any causal connection between the first defendant's negligence and the injury to plaintiff.

APPEAL by defendant and cross appeal by third party defendant from *McKinnon, Judge*. Judgments entered 15 March 1979 in Superior Court, NORTHAMPTON County. Heard in the Court of Appeals 5 February 1980.

This case arises out of a two collision, three car accident which occurred on Saturday evening, 26 June 1976 on U.S. Highway 158 between Jackson and Conway, North Carolina. Thelmore Thomas and Rufus Long, plaintiff appellees, brought suits, which were consolidated for trial, against Randolph Deloatch, defendant and third party plaintiff appellant, for personal injuries suffered in the accident. In both suits, Deloatch denied plaintiffs' allegations of negligence and pled plaintiffs' own contributory negligence as an affirmative defense and bar to any recovery. Deloatch also filed a third party complaint against Minnie E. Futrell and David Lee Gatling, third party defendants, seeking contribution for any judgment plaintiffs might be awarded against him. Deloatch took a voluntary dismissal, with prejudice, on third party complaints against Gatling. A jury trial was held in the case at which the following facts were presented.

Plaintiff Thomas and third party defendant Futrell had recently moved to Northampton County from New Jersey. They had been living together for some time. Futrell owned a white body, black convertible top 1967 Pontiac automobile which she was driving at the time of the collision. Thomas rode in the car often and drove it up until May, 1976 when his New Jersey

license, which he had not replaced with a North Carolina license, expired. Thomas, who had worked as a tire changer and truck driver, looked after the mechanics of the car.

On the night before the accident, Thomas and Futrell noticed problems with the car's transmission. The next morning, Thomas observed a puddle of transmission fluid under the car which holds twelve quarts. The car was a pint low and Thomas added a quart of fluid. He and Futrell then went to a mechanic who told them he could not fix it that day but would look at it Monday morning. Other than this slow fluid leak, there was no other problem with the car. They continued to use the car traveling to Futrell's brother's home and then to the nearby towns of Seaboard, Milwaukee (North Carolina) and Rich Square. They returned to the brother's house that evening about 8:00. When they were leaving, Thomas checked the fluid level in the car and found it to be full. Thomas had testified earlier on deposition that he checked the fluid level because he noticed a puddle under the car when they were leaving.

They were proceeding west on U.S. Highway 158 toward Jackson about 9:30 p.m., with Futrell driving, when the car suddenly "stopped pulling." Though the engine was still running, the car was only coasting. Thomas instructed Futrell to get the car off the road as quickly as possible and turn on the emergency flashers. She coasted the car past two driveways and onto the shoulder of the road up against a ditch and a mailbox. The car was so close to the mailbox that Thomas had to get out on the driver's side of the car.

After they had stopped, Thomas either rode with a passerby who stopped and then walked back, or the passerby alone drove back towards Conway and returned with two cans of transmission fluid to put in the car. Rufus Long, in front of whose house and mailbox the Futrell car was stopped, returned home, noticed the emergency flashers on the car and came over to the car to see what the problem was. He provided light by striking matches while Thomas put transmission fluid in the car. Thomas folded a piece of cardboard into a funnel and poured the fluid in while on the car fender. Thomas had to get onto the fender because he could not reach the fluid opening otherwise by standing in the ditch.

About this time, a car driven by Gatling came along and sideswiped the Futrell car along the left front fender knocking the bumper off. The Gatling car went seventy-five feet up the road and landed in the ditch on the same side of the road as the Futrell car. The Futrell car was not moved by the impact. The deposition testimony which was used for impeachment purposes at trial and the testimony at trial is in conflict as to whether Futrell and Thomas were in the car but had not started it, or whether Thomas was under the hood pouring in the fluid at the time of this collision.

Following the Gatling sideswipe, Thomas, Long and Futrell went up to Gatling's car to see whether he was injured. He was not. While Futrell talked to Gatling, who was denying being involved in a wreck, Long and Thomas started back to the Futrell car. Long was stopped by a cousin who appeared from a nearby residence. Long and his cousin were talking in a lane or drive which goes off U.S. Highway 158 to the right beside his home. Thomas walked in the Long yard along the right side of the Futrell car and crossed the ditch to observe the rear of the car to see if any damage had been done there. The Futrell car was not moved though Gatling testified he suggested it be moved farther off the highway.

While Thomas was standing at the rear of the car with one foot on the pavement and one foot off, he was struck by a vehicle owned and operated by Deloatch, which also struck the left rear of the Futrell car. Long, who had been a car length in front of the Futrell car, was struck and injured by the Futrell car. Pieces of the dark brown pants worn by Thomas and of his flesh were attached to the right front of the Deloatch car. Thomas' left leg was so severely injured that it had to be amputated. He went through four major operations.

Deloatch had left his home a half mile away and was going about fifty-five miles per hour, the speed limit, at the time of the wreck. There were no oncoming cars at that time. He did not see Thomas or the Futrell car. He had not eaten at all that day or the evening before but had consumed alcoholic beverages and had two beers just before the wreck.

No more than fifteen minutes passed between the Gatling and Deloatch collisions with the Futrell car. A number of vehicles

had passed by before and between the collisions without difficulty. The second collision blocked both lanes of the highway. The Futrell car was knocked completely across the westbound lane with the front end partially across the center line and the rear end off the highway in a driveway. The Deloatch car was two feet east of the Futrell car blocking the eastbound lane with its front facing the Long residence.

The investigating highway patrolman was of the opinion that Futrell, Gatling and Deloatch were all under the influence of alcohol. He did not form an opinion about the sobriety of the injured plaintiffs, Long and Thomas, but did note that both had a strong odor of alcohol about their persons.

Defendant presented for impeachment purposes numerous conflicts in Thomas' testimony at trial and on deposition. Thomas testified that at the time of the deposition, when he was still seeing doctors at the Duke Medical Center, his memory was impaired.

The evidence is in conflict on whether the emergency flashers, which were the parking lights in front and the red taillights in the rear, were on continuously from the time the car pulled off until the time of the collisions. Deloatch and Gatling testified they saw no rear reflectors but other testimony was to the contrary.

The evidence is also partly in conflict as to the location of the car once it was coasted to the side of the road and stopped. There is no conflict that the right side of the car was up against a ditch and mailbox. The hard surface of the two lane highway is at that point eighteen feet wide from outer white line to outer white line. On the side to which Futrell turned the car, there is a three feet paved apron outside the white line. On the other side, the apron is only one foot. The testimony conflicts on whether the car was over the white line in the main traveled portion of the highway. Some of the testimony placed the car a foot or more over the outer white line and into the westbound lane of the highway. Other testimony placed the car entirely on the paved apron and grassy knoll. According to Thomas, a foot of the Futrell vehicle which was six feet in width remained on the hard surface of the road. The highway from this point is straight and level in both directions with unobstructed visibility for a mile to the east and

700 to 800 feet to the west toward Jackson. The area is generally unlighted. It was hazy that evening and was beginning to rain.

The case was submitted to the jury on the issues (1) whether Thomas or Long were injured and damaged by the negligence of Deloatch; (2) whether Thomas or Long were contributorily negligent; (3) what amount of damages were Thomas or Long entitled to recover and (4) whether Futrell was negligent and did such negligence combine and concur with any negligence of Deloatch in proximately causing the injury and damage to Thomas or Long. The jury verdict was (1) the negligence of Deloatch injured and damaged Thomas and Long; (2) Thomas and Long were not contributorily negligent; (3) Thomas was entitled $85,000.00 and Long was entitled to $3,000.00 in damages and (4) Futrell was not a proximate cause of the injury and damage to Thomas and Long. From this jury verdict, defendant appeals.

*Johnson, Johnson and Johnson, by Bruce C. Johnson, for plaintiff appellees.*

*Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan, by James G. Billings, for defendant and third party plaintiff appellant.*

*Battle, Winslow, Scott and Wiley, by Samuel S. Woodley, for third party defendant appellee.*

VAUGHN, Judge.

Defendant contends his motion for directed verdict at the close of all the evidence and, therefore, his motion for judgment notwithstanding the verdict should have been granted against both plaintiffs because they were contributorily negligent as a matter of law.

> The general rule is that a directed verdict for a defendant on the ground of contributory negligence may only be granted when the evidence taken in the light most favorable to plaintiff establishes [plaintiff's] negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom. Contradictions or discrepancies in the evidence even when arising from plaintiff's evidence must be resolved by the jury rather than the trial judge.

*Clark v. Bodycombe,* 289 N.C. 246, 251, 221 S.E. 2d 506, 510 (1976); *accord Rappaport v. Days Inn,* 296 N.C. 382, 250 S.E. 2d 245 (1979); *Bowen v. Rental Co.,* 283 N.C. 395, 196 S.E. 2d 789 (1973).

[1] Defendant contends several actions of plaintiff Thomas affirmatively constitute contributory negligence as a matter of law. Thomas continued to ride as a passenger in a car, on which he was responsible for the maintenance, knowing it to have transmission problems. He instructed the driver to pull to the side of the road rather than into two driveways they passed thus creating a situation where a portion of the car was possibly still on the main portion of the highway. He was placed on notice by the Gatling sideswipe that the car was in a dangerous position but did nothing to attempt to move the car before the second collision. When he went to the rear of the Futrell car, he placed himself in a position of peril and failed to keep a reasonable and proper lookout for oncoming traffic. Finally, he contends defendant's intoxication contributed to the accident. All these factors do raise the issue of contributory negligence on the part of Thomas but the evidence on these matters is so contradictory, conflicting and inconsistent that in a light most favorable to plaintiff, it is a jury question and not a matter of law. Based on the evidence, it was for the jury to resolve these matters.

It is the duty of a person operating a car to see that it is in reasonably good condition and properly equipped so that it does not become a source of danger for occupants or other travelers. *Dupree v. Batts,* 276 N.C. 68, 170 S.E. 2d 918 (1969); *Scott v. Clark,* 261 N.C. 102, 134 S.E. 2d 181 (1964). Defendant relies on *Prevette v. Bullis,* 12 N.C. App. 552, 183 S.E. 2d 810 (1971), where this Court held the jury was properly permitted to consider the evidence that plaintiff allowed a car to run out of gas and possibly stall on the highway in determining the issue of contributory negligence. These circumstances, factually similar to the case at hand, were not held to be negligence as a matter of law. *See also Rouse v. Snead,* 271 N.C. 565, 157 S.E. 2d 124 (1967).

Defendant contends Thomas was in violation of G.S. 20-161(a), which would be negligence per se, in that he directed Futrell to park the car upon the paved or main traveled portion of the highway. Certainly the conflict of evidence on the location of the car which is a prerequisite before G.S. 20-161(a) is reached makes

violation of this statute a jury question. We further note that G.S. 20-161(a) does have an exculpatory provision for a vehicle "disabled to such an extent that it is impossible to avoid stopping and temporarily leaving the vehicle upon the paved or main traveled portion of the highway or highway bridge." The situation presented a jury question on whether it was an unavoidable stop due to the transmission disability. Plaintiff's evidence and contentions in a light most favorable to him are to the effect that the car was coasting and could not have turned into a driveway and was in fact completely off the road when stopped. But, such was for a jury to find and not for a trial judge to rule to the contrary as a matter of law.

A pedestrian does have a duty to keep a reasonable and proper lookout and it may be contributory negligence as a matter of law to not so do. See, e.g., Price v. Miller, 271 N.C. 690, 157 S.E. 2d 347 (1967). A driver of a car has a similar duty. See, e.g., Whaley v. Adams, 25 N.C. App. 611, 214 S.E. 2d 301 (1975). Plaintiff relies on two cases factually similar to this case. Basnight v. Wilson, 245 N.C. 548, 96 S.E. 2d 699 (1957); Gregory v. Adkins, 7 N.C. App. 305, 172 S.E. 2d 289 (1970). Both cases involved cars pulled to the road shoulder. The stalled cars were hit and the plaintiffs who were standing near the stalled cars were also hit. The plaintiffs in both cases were held to be contributorily negligent as a matter of law. But there is a crucial difference in both cases. In both Basnight and Gregory, the evidence is uncontradicted that the stalled car or at least a portion was in the highway traffic lane. In Gregory, it is uncontroverted that the plaintiff was also in the traffic lane. The conflict in the evidence in the case at hand on the location of the Futrell car and Thomas makes the question of Thomas' negligence a jury question of fact and not a judge's question of law.

Finally, defendant argues that Thomas' alcohol consumption made him contributorily negligent. But the degree of his impairment, if indeed any, was in dispute and was a jury question.

All defendant's arguments about contributory negligence on the part of Thomas are persuasive arguments for the jury. But the arguments are devoted to inconsistencies and contradictions in the evidence. That is for the jury to determine not for a court to determine on a motion for directed verdict when all such incon-

sistencies and contradictions are to be resolved in favor of the nonmovant.

[2]  Defendant also contends plaintiff Long was contributorily negligent as a matter of law in talking to his cousin while standing near but not on the highway in a lane beside his home and there being hit by the Futrell car which was knocked into him by the impact when the Deloatch car hit it. Such is not the law. *See Rowe v. Murphy*, 250 N.C. 627, 109 S.E. 2d 474 (1959); *contrast Gregory v. Adkins*, 7 N.C. App. 305, 172 S.E. 2d 289 (1970).

Defendant's remaining six assignments of error deal with the jury instruction of the trial judge. In these assignments, defendant raises questions of error in the instruction of the trial judge on the law relating to G.S. 20-161 and his instruction on insulating negligence and in his instruction on certain contentions of defendant.

[3]  The trial judge instructed in part:

[A] person may park or leave standing a vehicle on the shoulder of the highway, that is, completely off the traveled portion thereof, at a place where he can be clearly seen by approaching drivers from at least two hundred feet in any direction. A person may not leave a vehicle parked or standing on the highway in the main traveled portion of the highway unless the vehicle is disabled to such an extent that it is impossible to avoid stopping and leaving it there.

So, if one leaves a vehicle at least partially on the main traveled portion of the highway he may excuse that stopping by showing that the vehicle was disabled to such an extent that it was impossible to avoid stopping there and leaving it temporarily. To be impossible to remove means it was not reasonably practicable under the circumstances to move the vehicle. If one must leave a vehicle stopped or standing upon the highway, there shall be displayed thereon lights visible at least five hundred feet from the front, a white or amber light, and a red light visible at least five hundred feet to the rear.

So, if a motorist disabled upon the highway has upon his vehicle a light visible for at least five hundred feet to the rear and to the front under the conditions then existing, he

Thomas v. Deloatch and Long v. Deloatch

would be entitled to leave the vehicle there temporarily when it is not practical to move it. But, if he left a vehicle on the main traveled portion of the highway at a time when he could have with reasonable care removed the vehicle from the highway and left it there without the lights required by law, he would be negligent.

Defendant contends this was an erroneous instruction on the law set forth in G.S. 20-161 as it relates to this case. We disagree.

A reading of the complained of portion of the charge reveals that the trial judge was also instructing on G.S. 20-134 as well as G.S. 20-161. These statutes provide the following:

(a) No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled portion of any highway or highway bridge outside municipal corporate limits unless the vehicle is disabled to such an extent that it is impossible to avoid stopping and temporarily leaving the vehicle upon the paved or main-traveled portion of the highway or highway bridge.

(b) No person shall park or leave standing any vehicle upon the shoulder of a public highway outside municipal corporate limits unless the vehicle can be clearly seen by approaching drivers from a distance of 200 feet in both directions and does not obstruct the normal movement of traffic.

G.S. 20-161(a)(b).

Whenever a vehicle is parked or stopped upon a highway, whether attended or unattended during the times mentioned in § 20-129, there shall be displayed upon such vehicle one or more lamps projecting a white or amber light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, and projecting a red light visible under like conditions from a distance of five hundred feet to the rear, except that local authorities may provide by ordinance that no lights need be displayed upon any such vehicle when parked in accordance with local ordinances upon a highway where there is sufficient light to reveal any person within a distance of two hundred feet upon such highway.

G.S. 20-134. The portion of the charge complained of is an adequate instruction on the law contained in these statutes.

[4] Defendant contends that Thomas was not entitled to an instruction on the exculpatory provision of G.S. 20-161 for disabled vehicles because the disability was due to Thomas' own wrongful conduct. The statute does not provide for such distinction and we will not imply it. Further, defendant did not timely request such an instruction in writing as required by G.S. 1A-1, Rule 51(b) and G.S. 1-181. The assignment of error on this point is, therefore, overruled.

[5] Defendant also contends the trial judge should have mentioned the "paved" portion of the roadway as well as the "main-traveled" portion of the highway. The statute in part does require that "[n]o person shall park or leave standing any vehicle, whether attended or unattended, upon the paved *or* main-traveled portion of any highway. . . ." G.S. 20-161(a) (emphasis added); *contrast* 20-161(b). The only logical reading of the statute is that it does not prohibit the emergency parking of a vehicle on the shoulder of a highway, paved or otherwise, which is outside the main traveled part. "[T]he provisions of G.S. 20-161 require that no part of a parked vehicle be left protruding into the traveled portion of the highway when there is ample room and it is practicable to park the entire vehicle off the traveled portion of the highway." *Sharpe v. Hanline*, 265 N.C. 502, 504, 144 S.E. 2d 574, 576 (1965). This statute has been the law of this State since the adoption of the Motor Vehicles Act of 1937. 1937 N.C. Sess. Laws ch. 407. The statute when adopted read in part "[n]o person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway. . . ." *Id.*, § 123. The statute was rewritten in 1971 and that rewriting is the wording of the portion of the statute we are today dealing with. 1971 N.C. Sess. Laws ch. 294, § 1. The statute was written so as to apply to dirt country roads and super highways. It is unlawful to park in the main traveled portion of a paved or unpaved road without the excuse provided by the statute and it is unlawful to park in the main traveled portion of a super highway but not unlawful to park in the paved emergency strip or the pavement outside the white line. To interpret the statute as defendant would interpret it would make it illegal to pull over and stop on the paved strip on a super highway

specifically provided for emergency stops. The trial judge correctly instructed on the law arising under this statute for a two lane major highway which has pavement extending beyond the main traveled portion of the highway. It is necessary to qualify highway by the terms "paved or main-traveled portion" for the Motor Vehicles Act defines "highway" as the entire right-of-way width "when any part thereof is open to the use of the public as a matter of right for the purpose of vehicular traffic." G.S. 20-4.01(13). Without the qualification of the term highway in G.S. 20-161, virtually anywhere a driver pulled a car off the road, he would still be on the highway.

[6] Defendant assigns error in the trial judge's instruction on the negligence of third party defendant Futrell and the concept of insulating negligence. It is upon these same points that Futrell cross assigns error. We will, therefore, treat the assigned errors together. The trial judge instructed the jury that Futrell contended her negligence, if any, was "insulated" or "cut off" by the negligence of Deloatch. The trial judge then went on to instruct:

> If you find that Minnie Futrell was negligent in some respect in stopping or leaving her vehicle on the highway, such negligence would be insulated, she would not be liable, if the negligence of Randolph Deloatch was such that it broke any causal connection between Mrs. Futrell's negligence and the injury or damage which the plaintiffs may have suffered so that the negligence of Randolph Deloatch became the sole proximate cause of any injury which resulted.

> On the other hand, if negligence on the part of Mrs. Futrell continued to be a proximate cause of the injury right up to the time of the collision, then Mrs. Futrell would be liable for contribution in this action to contribute to any damage which Mr. Deloatch is required to pay.

The instruction was adequate. Our Court has said:

> In order to insulate the negligence of one party, the intervening negligence of another must be such as to break the sequence or causal connection between the negligence of the first party and the injury. The intervening negligence must be the sole proximate cause of the injury. *Rattley v. Powell*, 223 N.C. 134, 25 S.E. 2d 448 (1943). In cases involving rear

end collisions between a vehicle slowing or stopping on the road without proper warning signals, and following vehicles, the test most often employed by North Carolina courts is foreseeability. The first defendant is not relieved of liability unless the second independent act of negligence could not reasonably have been foreseen. *See McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972); Byrd and Dobbs, *Survey of North Carolina Case Law, Torts*, 43 N.C.L. Rev. 906, 927-30 (1965). *See* Byrd, *Proximate Cause in North Carolina Tort Law*, 51 N.C.L. Rev. 951 (1973). The foreseeability standard should not be strictly applied. It is not necessary that the whole sequence of events be foreseen, only that some injury would occur.

*Hester v. Miller*, 41 N.C. App. 509, 513, 255 S.E. 2d 318, 321 (1979). The instruction complied with the law of this State on insulating negligence. *See Rowe v. Murphy*, 250 N.C. 627, 109 S.E. 2d 474 (1959); Note, 33 N.C.L. Rev. 498 (1955).

Defendant's remaining assignments of error in the jury charge are in the adequacy of the charge given on the contentions of defendant as to the negligence of third party defendant Futrell. Defendant did not request any particular instructions from the trial judge on these contentions. At no point in the record does defendant indicate what instruction should have been given.

An exception to the failure to give particular instructions to the jury or to make a particular finding of fact or conclusion of law which was not specifically requested of the trial judge shall identify the omitted instruction, finding, or conclusion by setting out its substance immediately following the instructions given, or findings or conclusions made.

Rule 10(b)(2), Rules of Appellate Procedure. Defendant has not complied with the rules of appellate procedure. *State v. Freeman*, 295 N.C. 210, 244 S.E. 2d 680 (1978). We further note that the trial judge specifically asked counsel for the parties if there were any further requests for evidence or contentions before he concluded the charge and counsel for all parties including defendant indicated there were none. It was defendant's duty to tender such requests for additional instructions or contentions particularly when the trial judge asked for them. *Hunter v. Fisher*, 247 N.C.

226, 100 S.E. 2d 321 (1957). These assignments of error relating to contentions of defendant are overruled.

The charge considered contextually and as a whole is adequate and free from prejudicial error. The jury has spoken on the issues and their verdict stands.

No error.

Judges HEDRICK and CLARK concur.